*928 OPINION.
Tkammell :
The parties to this proceeding have stipulated that the gross amount of $139,537.75 ivas received by the petitioner in 1919 from the cancellation of Government contracts, and that the total amount of allowable deductions attributable to said contracts was $81,876.43, which amounts are set out in our findings of fact. The first two issues are thus settled by stipulation, and this leaves for consideration here only the third and fourth issues, namely, (3) whether the respondent erred in including in taxable income the amount of $25,187.90, which the petitioner received from the Government as reimbursement for a part of the cost of special facilities acquired by it for use in manufacturing the articles to be furnished under the contracts, and (4) whether the respondent erred in holding that the income in controversy is taxable under section 301 (c) of the Revenue Act of 1918, as income attributable to Government war contracts.
On the first issue for consideration, it is our opinion that the amount allowed by the Government as reimbursement for a part of the cost of war facilities does not constitute income to the petitioner, but represents that part of the cost of said facilities which was assumed by the Government. This amount represents a return of capital and to that extent reduced the cost of the facilities borne by the petitioner, and to the same extent reduced the basis for the determination of an amortization allowance under section 234 (a) (8) of the Revenue Act of 1918. G. M. Standifer Construction Corporation, 4 B. T. A. 525. The respondent contends that the amounts should be considered as income because no claim for amortization was filed as required by the statute. This position is untenable. The amount does not represent an amortization allowance or deduction under the taxing statute, and the time for filing claim for such deduction is not applicable. Accordingly, in computing net income, the gross amount of $139,537.75, received by the petitioner in 1919 from the cancellation of Government contracts, should be reduced by the amount of $25,187.90.
With respect to the second issue for consideration, the respondent contends that the income in controversy is taxable under section 301 (c) of the Revenue Act of 1918, which provides in pertinent part as follows:
(c) For the taxable year 1919 and each taxable year thereafter there shall be levied, collected, and paid upon the net income of every corporation which derives in such year a net income of more than $10,000 from any Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive, a tax equal to the sum of the following:
*929 (1) Such a portion of a tax computed at the rates specified in subdivision (a) as the part of the net income attributable to such Government contract or contracts bears to the entire net income. In computing such tax the excess-profits credit and the war-profits credit applicable to the taxable year shall be used; * * *
The petitioner contends that no part of the income in controversy is taxable under the provision of said section. The petitioner concedes that contracts 5506-C and 5541-C were valid Government contracts made between April 6,1917, and November 11, 1918, but asserts that the income derived therefrom during the year 1919, being less than the statutory limitation of $10,000 and being the only income received by it in that year attributable to a Government contract or contracts within the meaning of the statute above quoted, is not taxable thereunder. In reference to the three remaining contracts involved herein, and which are referred to in our findings of fact, supina, namely, contracts 1541, dated October 24, 1917, 1496-C, dated March 28, 1918, and 1530-C, dated March 29, 1918, the petitioner contends that these instruments did not constitute valid contracts on the part of the Government, but were agreements which had not been executed in the manner prescribed by law, and that since the amounts received on account of the adjustment and discharge thereof were awarded under the Dent Act, subsequent to January 1, 1919, the income was attributable to that Act, and not to Government contracts as that term is used in section 301 (c), supra.
The Act of March 2, 1919, referred to as the Dent Act (40 Stat. 1872), reads, in part material here, as follows:
AN ACT To provide relief in cases of contracts connected with the prosecution of the war, and for other purposes.
* * * rphat the Secretary of War be, and be is hereby, authorized to adjust, paj', or discharge, any agreement, express or implied, upon a fair and equitable basis that has been entered into, in good faith during the present emergency and prior to November twelfth, ninteen hundred and eighteen, by any officer or agent acting under his authority, direction, or instruction, or that of the President, with any person, firm, or corporation for the acquisition of lands, or the use thereof, or for damages resulting from notice by the Government of its intention to acquire or use said lands, or for the production, manufacture, sale, acquisition or control of equipment, materials or supplies, or for services, or for facilities, or other purposes connected with the prosecution of the war, when such agreement has been performed in whole or in part, or expenditures have been made or obligations incurred upon the faith of the same by any such person, firm, or corporation prior to November twelfth, nineteen hundred and eighteen, and such agreement has not been executed in the manner prescribed by law; * * *
The three contracts or agreements last mentioned were suspended or cancelled by the War Department and the petitioner filed applications for relief under the provisions of the Dent Act, supra. The Secretary of War caused said agreements to be investigated by an *930 examining board, which determined that they had not been executed in the manner prescribed by law, and the awards set out in our findings of fact were paid to the petitioner under the provisions of said Act.
If the income here involved was in fact received as the result of settlements of valid and binding Government contracts made between the dates specified in the Act, it is immaterial whether or not such settlements were made under the Dent Act.
Since the question as to whether said contracts were Government contracts made between April 6, 1917, and November 11, 1918, is presented, we must decide it from the evidence before us.
We are not advised by the pleadings, evidence, nor briefs of counsel with respect to any alleged defect which would impair the validity of these contracts. On this point, the petitioner was content merely to oiler in evidence certified copies of the original instruments on file in the War Department, together with certified copies of certain related documents and correspondence. It is to these we must look in determining the issues presented.
The three contracts in controversy were executed on behalf of the Government by officers of the Quartermaster Corps, which .is a component part of the War Department. The manner of making such contracts is prescribed by paragraph 3744 of the Revised Statutes, which provides that “it shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior to cause and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts, to be reduced to writing, and signed by the contracting parties with their names at the end thereof.” Insofar as this statute relates to contracts made with the Quartermaster Corps, it was modified by the Act of March 4, 1915, 38 Stat. 1062-1078, which provides:
That hereafter whenever contracts which are not to be performed within sixty days are made on behalf of the Government by the Quartermaster General, or by officers of the Quartermaster Corps authorized to make them, and are in excess of $500 in amount, such contracts shall be reduced to writing and signed by the contracting parties. In all other cases contracts shall be entered into under such regulations as may be prescribed by the Quartermaster General.
Each of the three contracts above referred to was in excess of $500 in amount, and was not to be performed within 60 days. Each was reduced to writing and signed by the contracting parties, and each was executed on behalf of the Government by an officer of the Quartermaster Corps.
These facts lead us to the conclusion that the instruments constituted valid contracts, executed in the manner prescribed by law, if the respective officers of the Quartermaster Corps by whom they *931 were executed on behalf of the Government were authorized to make them.
We can have no doubt that the Quartermaster General had authority to make such contracts, subject to the limitations imposed by the Act of March 4, 1915, supra, and that he had authority to authorize subordinate officers of the Quartermaster Corps to make them. That the officers who made these contracts possessed the requisite authority, we think, is clearly indicated- by the record.
In the case of each of said contracts, the name of the contracting officer was signed by a subordinate officer, but it appears .from subsequent correspondence or from modifying contracts, or both, that the contracting officers recognized their signatures as properly signed and regarded the instruments as binding contracts. And the same recognition and approval were extended by the Acting Quartermaster General. The record further discloses that the officers who executed these contracts on behalf of the Government acted under authority of the Secretary of War.
A somewhat similar situation was presented in United States v. Swift & Co., 270 U. S. 124, where the court, in its opinion at page 144, said:
Some suggestion 'is made that the signature of General Kniskern to the letter of December 10 was by another. The signature was
“ By authority of the Director of Purchase and Storage:
“A. D. Kniskern,

“Brigadier General, Q. M. Corps, Officer in Charge,

“By O. W. Merge,

“M Lieut., Q. M. Corps.”

It is evident from subsequent correspondence that General Kniskern recognized this as his signature and as a binding contract. There seems no doubt about the authwrity of Lieut. Menge to attach his signature or that it was the regalar practice in' the office. In a similar case the Court of Claims, Union Twist, Drill Co. v. United States, 59 Ct. Cls. 909, held that the affixing of the signature of a contracting officer by another duly authorized created no infirmity in the execution of the contract. A similar conclusion was reached by Attorney General Gregory, 31 A. G. 349, and by Attorney General Wirt, 1 A. G. 670.
From an examination of all the evidence before us, we can reach no other conclusion than that the contracts involved herein were valid contracts, executed in the manner prescribed by law. The fact that the Secretary of War settled the contracts under the Dent Act then is not material. That fact is not determinative of the validity or invalidiy of the contracts, and we have found from all the evidence that they were valid.
Since we find that the three contracts which were adjusted and settled by Dent Act awards were valid Government contracts executed between April 6, 1917, and November 11, 1918, and it being *932 conceded that the other two contracts were valid Government contracts made between those dates, it is our opinion that the amounts received in settlement of the five contracts are taxable under section 301 of the .Revenue Act of 1918. A. B. Kirschbaum Co., 5 B. T. A. 65. See also R. Hoe & Co., 7 B. T. A. 1277. We see no reason for changing our view that the original contracts alone were the cause of the petitioner’s receipt of the income. If there had been no original contracts, no compensation would have been paid for their cancellation, settlement or adjustment.
In view,of what has been said above, the deficiency herein should be redetermined upon the basis of a net income of $32,473.42. taxable under the provisions of section 301 (c) of the Revenue Act of 1918.
Reviewed by the Board.

Judgment will be entered on 15 days’ notice, imder Rule 50.