## A. J. TOWER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2405.

Circuit Court of Appeals, First Circuit.
March 5, 1930.

W. Sidney Felton, of Boston, Mass. (Phillips Ketchum, of Boston, Mass., on the brief), for petitioner.

Randolph C. Shaw, Sp. Asst. Atty. Gen. (G. A. Younquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

An appeal from a decision of the Board of Tax Appeals sustaining the Commissioner of Internal Revenue in determining under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1057, 1078), the amount of amortization for depreciation of "war facilities" to which the petitioner was entitled under the section above referred to.

The facts as found by the Board of Tax Appeals, and concerning which there is no dispute, are as follows: In March and June, 1918, the petitioner, a Massachusetts corporation, entered into contracts with the United States to manufacture certain supplies for use of the American soldiers in the war. In order to perform these contracts, the petitioner added equipment and constructed additions to its factory at a cost of $153,844.66, which were not completed until the fall of 1918. On November 12, 1918, the contracts were canceled by the War Department by reason of the signing of the Armistice; and since the additional facilities were installed solely for manufacturing war supplies, their value upon the cancellation of the government contracts was greatly depreciated, the post war value, it is agreed, being only $85,906.86.

The petitioner in its original and amended income tax returns for the year 1918 and for the year 1919, claimed amortization with respect to its war facilities to the amount of the difference between the cost of said facilities and their residual post war value, or $67,937.80.

Some time during the year 1919, the petitioner also presented a claim for damages sustained by it by reason of the cancellation of the contracts, and, after hearing, the War Department settled the petitioner's claim by payment of $78,477.61. Of the amount so paid, the sum of $39,809.38 was expressly stated in the allowance of the petitioner's claim to "represent loss suffered by petitioner with respect to its war facilities."

Because of this statement in the allowance of the petitioner's claim, the Commissioner of Internal Revenue, under the provisions of section 234 (a) (8) of the Revenue Act of 1918, redetermined the amount of amortization which the petitioner was allowed to deduct from its gross income in the years 1918 and 1919, and reduced the sum deducted by the petitioner in its returns for those years, as representing amortization of its "war facilities" by the amount allowed under its claim for damages as representing its loss with respect to its war facilities, which left a balance as permissible amortization of only $28,128.42, instead of $67,037.80, which the petitioner had claimed in its returns, and as a result the Commissioner notified the petitioner of deficiencies in its income tax for those years.

It was from this ruling of the Commissioner of Internal Revenue that the petitioner appealed to the Board of Tax Appeals, and it is from the decision of the Board of Tax Appeals sustaining the Commissioner's ruling that the petitioner now appeals to this court.

The government contends, since from the language of section 234 (a) (8) only "such part of the cost of such facilities * * * as has been borne by the taxpayer" (Italics are ours), may be allowed as a reduction for amortization, and the government in connection with its claim for damages for breach of its contracts has paid the taxpayer the sum above named on account of loss suffered by the taxpayer in respect to its war facilities, that the taxpayer has to this extent been relieved of the cost of its war facilities, and therefore its allowance for amortization of its losses through obsolescence of its war facilities should be reduced by this amount. So far as it has any bearing, the discussion in Congress when this section was under consideration bears out this interpretation. G. M. Standifer Const. Corp. et al., 4 B. T. A. 525, 557, 558.

The petitioner contends that in 1920 the allowance for amortization in its 1918 and 1919 returns was a closed book; that the entire allowance for damages for breach of its contracts, under article 51 of the Regula-

tions 62 of the Revenue Department, constituted income for that year and on which it has already paid taxes; and that no part of it can be transferred to the year 1918 and 1919, and, in effect, as it claims, treated as income for those years.

In accordance with the obvious purpose of the provisions of section 234 (a) (8) of the Revenue Act, we think the sum allowed under its claim for damages as representing the loss suffered in respect to its war facilities, should be deducted from the sum claimed for amortization in 1918 and 1919.

With full knowledge in February, 1919, when chapter 18 of the Sixty-fifth Congress was passed (40 Stat. 1057), that many contracts entered into in 1918 for the purchase of war supplies had involved the installing of new machinery and equipment and the building of new buildings, which had become obsolete and of greatly reduced value to the owners by the cancellation of such contracts upon the signing of the Armistice, Congress provided in section 214 (a) (8) and section 234 (a) (8) that a taxpayer who had installed such equipment or built new buildings, etc., as preparatory to furnishing such supplies, might, in the years 1918 and 1919, deduct from its gross income a reasonable sum for the amortization of "such part of the cost of such facilities as was borne by the taxpayer."

The government also recognizing that in many cases loss of profits were also sustained by those whose contracts for supplies were terminated upon the signing of the Armistice, allowed the several departments to adjust such claims on the basis of a breach of contract.

It also appearing that in many instances under the stress of conditions existing in 1918, contracts were signed by persons unauthorized to execute them, but under which the parties had in good faith gone on and prepared to and did furnish the supplies called for in the contract, Congress in 1919 passed the so-called Dent Act (Act March 2, 1919, c. 94, 40 Stat. p. 1272 (50 USCA § 80 note) under which the Secretary of War was authorized to adjust, pay, and discharge any agreement, express or implied, upon a fair and equitable basis that had been entered in good faith during the "present emergency"; and in making an award for damages by reason of the termination thereof by the government, the Secretary of War was expressly authorized under this act to include, not only prospective or possible profits for goods and

supplies actually "delivered to and accepted by the United States," but also "a reasonable remuneration for expenditures and obligations or liabilities necessarily incurred in performing or *preparing to perform* said contract or order." (Italics ours.)

Upon the petitioner filing its claim for damages for breach of its contracts, it was found that its contracts had not been formally executed by an officer on the part of the government authorized to sign. Its claim, however, was considered under the Dent Act as for damages resulting from a contract entered upon in good faith.

While the contracts contained no provisions obligating the government to pay for depreciation of so-called war facilities by reason of a cancellation of the contract, it appears that the petitioner included in its claim damages for obligations and liabilities incurred in preparing to perform its contracts, as it was permitted to do under the Dent Act. The War Department, therefore, in awarding as a part of its allowance a sum "representing a loss with respect to its war facilities," was acting within the scope of the act.

Why this was done, the petitioner having already been allowed to deduct the full amount of its obsolescence on its war facilities in its tax returns for 1918 and 1919, is not clear, unless there was lack of co-ordination between the War and the Revenue Departments. However, we think it clear that the sum allowed by the War Department, as loss suffered by the taxpayer with respect to its war facilities, represented in part the same loss which the taxpayer had already deducted in its 1918 and 1919 returns. At least, there is no contention otherwise by the petitioner. In equity and fairness, therefore, there should be a readjustment for those years on the basis claimed by the government.

The petitioner, however, contends that under Treasury Regulation 62, art. 51 of the Revenue Department, all such allowances for breaches of contract constitute income for the year in which it is allowed, and all income must be accounted for in the year received and cannot be allocated to a previous year. A fair construction of the Treasury Regulation 62, art. 51, and as interpreted in the decisions of the Board of Tax Appeals, we think, requires only so much of the damages awarded as represented loss of profits to be treated as income, and so much of such allowance as represented obsolescence of war facilities should be treated as a replacement

of capital, and should be deducted from any allowance for amortization under section 234 (a) (8). Peninsula Shipbuilding Co., 5 B. T. A. 739; Rosenwald & Weil, Inc., 11 B. T. A. 921, 928. The deduction of such allowance for loss suffered with respect to war facilities from a sum previously claimed for amortization, therefore, is not an allocation of income to another year, but a redetermination of the "reasonable deduction for amortization" under paragraph 8, § 234 (a) of the Revenue Act of 1918 (40 Stat. 1078).

It is, therefore, held that in so far as the petitioner, under its claim for damages, received compensation for obsolescence with respect to its war facilities, to that extent it has not, within section 234 (a) (8), borne the cost of such facilities, and that the Commissioner of Internal Revenue was warranted under paragraph 8 of said section in redetermining the amount that the taxpayer was entitled to deduct for amortization during the years in question.

The decision of the Board of Tax Appeals is affirmed.