## TROJAN POWDER CO. v. UNITED STATES.

### No. 42086.

Court of Claims.

Jan. 6, 1936.

Guy Patten, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Section 203 of the Revenue Act of 1918 (40 Stat. 1060) provides for the use of inventories whenever in the opinion of the Commissioner of Internal Revenue they are necessary in order correctly to determine the income of the taxpayer and also authorizes the Commissioner to prescribe the basis upon which the inventories should be taken. Accordingly, the Commissioner on April 17, 1919, published Art. 1582, Regs. 45, which provided that inventories must be valued at (a) cost, or (b) cost or market, whichever is lower. This regulation further provided that "a taxpayer may, regardless of his past practice, adopt the basis of 'cost or market whichever is lower', for his 1918 inventory, provided a disclosure of the fact and that it represents a change is made in the return." The return, as contemplated by the statutes and the regulations, was the return filed June 16, 1919. Florsheim Bros. Drygoods Co., Ltd., v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542. The past practice of plaintiff, as disclosed in its 1917 return, was to value its inventories at cost, and at the time the 1918 return was filed the regulations above mentioned had been promulgated. The plaintiff, however, made no change in its 1918 return from the cost basis previously followed and it likewise followed the same practice of using cost in its return for 1919. No change was made in the basis of valuing the inventory until the 1920 return was filed, and a disclosure, to that effect, was set out in this return. Authority to make the change in the 1920 return was provided in a revised regulation (Art. 1582, Regs. 45, promulgated January 28, 1921). When the change was made in the 1920 return, no request was made by plaintiff for permission to revise the inventories for prior years on the new basis. The first suggestion of an intention to adopt a new basis for the valuation of inventories for 1918 occurred in 1924 when an amended return was tendered on the new basis, but this return was not accepted by the Commissioner because of other

Warren W. Cunningham, of New York City (Chester M. Patterson, of New York City, on the brief), for plaintiff.

necessary adjustments, and it was not until 1927 that an amended return, disclosing the change, was submitted for 1918. In the meantime, the 1918 return had been under consideration for about eight years. The Commissioner refused to allow the change of basis for valuing the inventories from cost to cost or market, whichever was lower. We find no reason for reversing his decision. The use of the inventories and the basis on which they were to be valued were matters which, in the first instance, were delegated to the Commissioner and, where he has exercised the authority thus conferred upon him by Congress, the burden rests on plaintiff to show that his action was plainly arbitrary before a reversal of his decision can be had. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848. The record in this case does not satisfy that burden.

Inventories for one year have a direct bearing on income of the prior and of the succeeding years. The opening inventory for 1918 should, unless a change in the basis of valuing the inventories be permitted, be also the closing inventory for 1917, and the closing inventory for 1918 should be the opening inventory for 1919. In carrying out the statutory authority to fix the basis for the valuation of inventories, the Commissioner provided for the use of either "cost, or cost or market, whichever is lower." By reason of the extent to which inventories of one year affect income of the prior and succeeding years, it would not further the orderly administration of the taxing acts to permit taxpayers to change their inventories from year to year at their pleasure. For these reasons, the Commissioner accordingly provided how a change could be made and that a change, once made, could be altered only with his permission. These were reasonable requirements and, inasmuch as plaintiff failed to comply therewith and has failed to present any exceptional circumstances which might have justified the Commissioner in departing from his regulations, we should not disturb his action. This conclusion is not in conflict with J. W. & A. P. Howard Co. v. Commissioner, 15 B.T.A. 1096, for the reason that in that case the authority to make the change for the year in which it was sought had not been issued at the time the return was filed. See B. L. Marble Chair Co. v. United States, C.C.H. 1932, vol. 3, par. 9059, where a change was denied.

The next question is whether the amortization which the revenue statute authorized as an allowable deduction from plaintiff's income for 1918 should be reduced for that year by the amount allowed and paid to plaintiff by the War Department subsequent to December 31, 1918, on account of the same war facilities in respect of which the Commissioner was called upon to determine the allowable amortization deduction. The amount allowed and paid to plaintiff by the War Department arose from the suspension and cancellation of certain formal contracts with the government. During the World War, plaintiff was engaged in the production of war supplies under four contracts which were in full force and effect on November 11, 1918, and had acquired, or constructed, plant facilities and materials for the carrying out of these contracts. During December, 1918, the War Department notified plaintiff to suspend operations under the contracts with a view to negotiating supplemental contracts for the cancellation, settlement, and adjustment of the formal war contracts theretofore made, and during the same month the plaintiff, in pursuance of this notification, suspended operations under the contracts. No negotiations, however, were had between plaintiff and the War Department prior to December 31, 1918, for the settlement and adjustment of the contracts. Before any settlement had been arrived at or agreed upon between plaintiff and the War Department, as a result of the cancellation of the contracts, the act of March 2, 1919, 50 U.S.C.A. § 80 note, known as the "Dent Act," was enacted which authorized the Secretary of War to adjust, pay, or discharge any agreement, express or implied, which had been entered into during the war for the production of equipment, materials, supplies, or facilities connected with the prosecution of the war.

During 1919 and 1920, the War Department allowed and paid plaintiff the total of $221,256.25 on account of plant facilities, constructed or acquired, and for materials acquired incident to carrying out its war contracts. The amount allowed and paid by the War Department was referred to in the settlement agreement as having been made under the "Dent Act" although the contracts under which the amount was allowed and paid were formal written contracts.

When the Commissioner of Internal Revenue came to determine the amount of

amortization deductible from gross income for 1918, he first computed the total amount allowable under the Revenue Act in the sum of $655,483.63, from which he then deducted the amount of $221,256.25, which had also been allowed and paid to plaintiff by the War Department in reimbursement of the war facilities constructed or acquired by plaintiff, for which amortization was allowable and on which the revenue statute authorized a reasonable deduction for amortization. The Commissioner thus determined and allowed the amount of $434,227.38 as a deduction from gross income for 1918. Plaintiff contends that the amount allowed and paid by the War Department should not have been used to reduce the amortization, otherwise allowable under the Revenue Act, inasmuch as the Dent Act, which authorized such payment by the War Department, was not enacted until March 2, 1919, and, therefore, that plaintiff had no claim against the defendant prior to December 31, 1918, which could be used in reduction of amortization allowable for that year. We cannot agree with this contention. The war contracts were suspended and in effect canceled prior to December 31, 1918. They were formal contracts and contained provisions for the payment by the government to the plaintiff of compensation in the event of their cancellation. At the time of cancellation in December, 1918, plaintiff had a claim against the government for full compensation for such cancellation and the War Department had authority under the contracts and existing law to adjust and settle such contracts independently of the Dent Act of March 2, 1919.

It is further urged by plaintiff that the Commissioner should have included the entire amount received by it from the War Department as a part of its gross income for 1919, though there is no suggestion by plaintiff that it reported that amount as income for 1919, or that any tax has been paid thereon.

The purpose of the amortization provision in the revenue statute was to give relief to taxpayers through reasonable deductions from war income on account of investments in war facilities which were not useful or could not be used to their full capacity after the termination of the war. It was a relief measure and should be construed liberally in order to accomplish its end, but liberality in construction should not be carried to the point of allowing a taxpayer a deduction on account of facilities in respect of the cost on which it has already received compensation or reimbursement. At the end of 1919 plaintiff had borne, or had obligated itself to bear, the cost of facilities on which the Commissioner of Internal Revenue computed the total amortization allowance. The contracts with the War Department provided for cancellation "upon fair and equitable terms" in the event of termination of war, and upon the termination of the war the contracts were canceled. Promptly after cancellation negotiations between the government and the plaintiff were begun for the purpose of arriving at the amount due plaintiff on account of facilities constructed and acquired by it for the fulfillment of the canceled contracts, and the amount of $221,256.25, which was allowed and paid to plaintiff, represented reimbursement in part for the cost of war facilities previously borne by plaintiff. The amount clearly did not represent income, but was a return of capital and, therefore, served to reduce the cost of the facilities in respect of which plaintiff was otherwise entitled to amortization under the revenue statute. In effect, the amount paid by the War Department was a part of the costs incurred by plaintiff which were assumed by the government. Inasmuch as plaintiff has been paid for these costs in their entirety, no occasion exists for giving any further relief on the same costs in the form of an amortization deduction. Appeal of G. M. Standifer Construction Corporation and Vancouver Home Co., 4 B.T.A. 525; Appeal of Peninsula Shipbuilding Co., 5 B.T.A. 739; Liberty Iron Works v. Commissioner, 6 B.T.A. 181; Rosenwald & Weil, Inc., v. Commissioner, 11 B.T.A. 921; and A. J. Tower Co. v. Commissioner, 16 B.T.A. 101, affirmed (C.C.A.) 38 F.(2d) 618. No decisions to the contrary have been cited and we have found none. It follows that the petition should be dismissed, and it is so ordered.