**STOKES v. ROTHENSIES, Collector of Internal Revenue.**

No. 3196.

District Court, E. D. Pennsylvania.

June 29, 1945.

Edgar J. Goodrich and Walter J. Brobyn, both of Washington, D. C., and F. H. Spotts (of Pepper, Bodine, Stokes & Schoch), all of Philadelphia, Pa., for plaintiff.

Harold D. Cohen, Sp. Asst. to Atty. Gen., for defendant.

BARD, District Judge.

This is an action by Edward Lowber Stokes to recover $37,706.41, representing an allegedly excessive income tax paid by plaintiff for the calendar year 1936 and an assessment for the same calendar year made by the Commissioner of Internal Revenue together with interest from the dates of payment.

I make the following special

### Findings of Fact

1. For the calendar year 1936 plaintiff paid to defendant in quarterly installments amounts totalling $44,004.67, representing individual income tax as reported and computed on his return for that year. Thereafter, on February 19, 1938, pursuant to an additional assessment by the Commissioner of Internal Revenue for the year 1936, plaintiff paid to defendant an alleged deficiency of $19,894.07, plus interest of $1060.11, or a total additional assessment of $20,954.18. On October 3, 1939, plaintiff received a refund in the principal amount of $501 together with interest of $26.70.

2. On March 9, 1940, plaintiff filed a timely claim for refund with defendant, which was rejected by the Commissioner of Internal Revenue on December 11, 1942.

3. From 1922 to November 4, 1931, plaintiff was a partner in the firm of Edward Lowber Stokes and Company, dealer in securities. On November 4, 1931, the partnership dissolved and thereafter plaintiff carried on the business individually and as sole proprietor under the same firm name.

4. Prior to 1936 the accounting practice of the partnership, followed by plaintiff as sole proprietor, had been to inventory at market prices all unsold securities carried in the investment or securities account and the income for tax purposes was computed on the basis of the inventory figures.

5. On December 18, 1936, plaintiff created a new account on his books designated "Personal B" Account, and to it transferred from the company's securities account four issues of municipal bonds valued at original cost price. The cost and market values of these bonds were as follows:

| Par Value | | Cost | Market Value at 12/18/36 | Market Value at 12/31/36 |
|---|---|---|---|---|
| 150,000 | Allegheny Co. Pa. 2¾'s | 152,842.80 | 156,750.00 | 162,000.00 |
| 100,000 | New York City 3¼'s, 7/1/75 | 101,656.25 | 106,500.00 | 109,000.00 |
| 225,000 | New York City 3½'s, 1/15/76 | 228,375.00 | 248,625.00 | 256,500.00 |
| 100,000 | New York City 4's, 10/1/80 | 112,625.00 | 111,218.75 | 125,000.00 |

6. These bonds were not included in the closing inventory of the company for 1936, and their appreciation in book value was not reflected in plaintiff's income tax return. The deficiency assessed against plaintiff by the Commissioner of Internal Revenue was based on the exclusion of these bonds from inventory.

7. Included in the closing inventory for 1936 were the following government bonds of which the cost and market values as of December 31, 1936, were as follows:

| Par Value | Cost | Market Value 12/31/36 |
|---|---|---|
| 1,300,000 U.S.Treasury 1¼'s, 12/15/41 | 1,300,000.00 | 1,306,500.00 |
| 1,000 000 U.S.Treasury 2½'s, 12/15/49 | 1,006,850.78 | 1,014,687.50 |
| 350,000 U.S.Treasury 2¾'s, 9/15/56–59 | 357,585.94 | 360,500.00 |
| 350,000 U.S.Treasury 2⅞'s, 1955–60 | 363,093.75 | 366,187.50 |

Plaintiff included in his 1936 income for federal tax purposes the excess of the market value of these government bonds over their cost, as shown in the closing inventory.

8. On December 15, 1936, plaintiff exchanged Treasury notes of an aggregate par value of $1,600,000, and aggregate cost of $1,621,777.34, for Treasury notes and bonds of the aggregate par value of $1,600,000, and an aggregate market value on that date of $1,613,375.

9. Plaintiff wrote off losses of $21,777.-34 based on the difference between the original cost of the bonds and notes and the face value of the bonds and notes which were received in exchange. Plaintiff included the new Treasury bonds and notes in the inventory appraisal of December 31, 1936, at their then market value of $1,610,906.25, creating an inventory profit of $10,906.25, so that a net loss of $10,871.09 on the exchanged government securities was reflected on his books and in his income tax return for 1936 (see par. 7 supra).

10. The inventory of December 31, 1936, contained miscellaneous industrial and railroad bonds and stocks listed in the Investment Account as follows:

11. Plaintiff included the excess of market value over the cost of the bonds and stock in the 1936 income for federal tax purposes, as shown in the closing inventory.

12. The securities listed in paragraphs 5, 7 and 10 were commingled on the books of the plaintiff with other securities held for resale to customers and were an integral part of plaintiff's business as dealer. They constituted securities which were held by plaintiff for resale to his customers in the ordinary course of his business as a dealer in securities.

### Discussion

Taxpayer has engaged in the securities business for many years under the trade name of Edward Lowber Stokes & Co. Until November 1931 the company was a partnership composed of taxpayer and his brother, but thereafter taxpayer carried on the business individually and as sole proprietor under the same firm name. Despite termination of the partnership, taxpayer continued to file for each year a company return on Partnership Form 1065 showing the income from the business with himself as 100% distributee. In addition he filed Form 1040, the individual income tax return, showing as his distributive share from Edward Lowber Stokes and Company the amount set forth in Form 1065, as well as other income from personal investments and speculations.

In the Form 1065 return for 1936 taxpayer computed the company's income by inventorying the unsold securities on hand at their respective market values. Included among the securities in the closing inventory were four issues of United States Treasury bonds with a par value of $3,-000,000 and twenty-two issues of miscel-

| Par Value or Number | Cost | Market Value 12/31/36 |
|---|---|---|
| $388,000 miscellaneous industrial and railroad bonds | $283,416.81 | $296,480.00 |
| 835 shares miscellaneous stocks | 82,404.40 | 79,362.50 |

laneous industrial securities. Shortly before the end of the taxable year taxpayer transferred four issues of municipal bonds to a new "Personal B" account. Since these municipal bonds were not included in the closing inventory, their appreciation in value was not reflected in the company income which was declared for tax purposes. In 1938 a deficiency of $19,894.07, plus interest of $1060.11, was assessed by the Commissioner on the theory that the appreciation of these municipal bonds should have been reflected as profit in the 1936 return.

Taxpayer filed a claim for refund on the ground that the municipal bonds, the Treasury bonds, and the miscellaneous industrial securities were investment items and were not held as "stock in trade" and, therefore, were not inventoriable. After denial of the claim for refund, taxpayer brought this action to recover the alleged excessive payment of tax resulting from overstatement of income and the alleged erroneous assessment for the taxable year 1936.

## Municipal Bonds

(A) On December 31, 1935, taxpayer purchased Allegheny County 2¾% bonds par value $250,000 from Brown, Harriman and Company. Purchase of the bonds was financed by a loan from Fidelity-Philadelphia Trust Company to the extent of 99% of par value and the bonds were delivered directly to the bank as collateral. The purchase was entered in a company account entitled "Special Account—Participation: Company 150 M—W. Standley Stokes 100 M." The company disposed of bonds in the amount of $100,000 to various bond dealers between March 10 and September 29, 1936, the last sale of fifty bonds being made on that day. On September 29th plaintiff requested Mellon National Bank to submit a bid for $100,000 bonds, which would have reduced plaintiff's holding to $50,000 bonds, but the bank was uninterested. The bonds were repeatedly advertised for sale in the "Blue List," a trade periodical circulated among dealers and other prospective purchasers, from February 20, 1936, to June 1936. Bonds in the value of $150,000 remaining in the account were transferred to "Personal B" account on December 18th and were not included in the closing inventory of 1936.

(B) On February 20, 1936, taxpayer opened a new account in his books for New York City 3¼% bonds. Numerous purchases were made from bond dealers between February 20th and May 21st, totalling $300,000 of these bonds. Between April 2nd and June 16th several sales were made to bond dealers which reduced the total value of these bonds owned by taxpayer to $150,000. On September 29th and November 24th plaintiff sold two $25,000 blocks of these bonds to dealers, reducing the total to $100,000. This amount was transferred to the "Personal B" account on December 18th and was not included in the closing inventory of 1936. All of these bonds were pledged to the Chase National Bank or the Fidelity-Philadelphia Trust Company as collateral security for loans exceeding 90% of their value.

(C) Plaintiff purchased $250,000 New York City 3½% bonds on February 28, 1936, from bond dealers and deposited them with Fidelity-Philadelphia Trust Company as collateral security for loans. Several purchases and sales of this issue were made in May and June 1936 in twenty-five bond blocks. On September 29th taxpayer sold $25,000 bonds from those deposited as collateral with the bank. The remaining bonds totalling $225,000 were transferred to the "Personal B" account on December 18th and were not included in inventory at the end of the year.

(D) Plaintiff purchased $100,000 of New York City 4% bonds on July 8, 1936, which were deposited with Fidelity-Philadelphia Trust Company as collateral on a loan. On August 31st, plaintiff's New York office transferred $50,000 bonds which had been purchased at a prior date to the Philadelphia office. Plaintiff offered this issue for sale in the Blue List several times during the month of August. On October 1st and November 25th plaintiff sold blocks of twenty-five bonds to bond dealers, reducing his holding to $100,000 of this issue which was subsequently transferred to the "Personal B" account on December 18th and was not included in the closing inventory of 1936.

## United States Treasury Bonds and Notes

For several years prior to 1936 plaintiff dealt in United States Government bonds and notes. During 1936 plaintiff made approximately 150 sales of government securities with a par value of about twenty-three million dollars and purchased a like amount. His purchases were financed by loans from banks at a very low

rate of interest—as low as 1/4 of 1%. Plaintiff was not considered a "specialist" in government securities since he did not carry a sufficiently large and varied stock; he did not advertise as a government bond specialist; he did not issue daily printed quoted quotations; he did not have wire connections throughout the country which would enable the instant quotation of prices and instantaneous purchases and sales. This, however, does not prevent him from being a dealer. Helvering v. Fried, 299 U.S. 175, 57 S.Ct. 150, 81 L.Ed. 104.

On December 15, 1936, plaintiff exchanged $1,600,000 par value government notes and bonds for a new issue at the same par value, suffering a loss of $21,777.34, the difference between the original cost of the government securities and the par value of the new issue, which loss was reflected on his books. Plaintiff included his total holdings of government notes and bonds, totalling $3,000,000 par value, including the notes and bonds received in the exchange in his closing inventory for 1936.

### Miscellaneous Listed Securities

On December 31, 1936, plaintiff included twenty-two miscellaneous industrial and railroad bonds and stocks in the closing inventory for income tax purposes which he now claims was an erroneous inclusion of profit. Except for one or two of the securities, they were listed on the stock exchange and were purchased in the open market from members of the Stock Exchange, of which plaintiff was not a member. These securities were carried in the so-called "Investments" account. This account was a miscellaneous, catch-all account in which plaintiff listed all securities which he did not desire to include in an individual or company account regardless of whether the security was, in fact, held for investment purposes. Plaintiff's books showed sixty-five purchases and twenty-five sales of securities listed in the "Investment" account and the value of the securities therein listed at the end of 1936 was approximately $375,000.

The Revenue Act of 1936[1] permits the use of inventories to compute income for tax purposes whenever the Commissioner determines that the use of inventories is necessary to clearly reflect income. Under the Act the Commissioner is authorized to prescribe the conditions under which the inventory method may be used in a particular business. The Commissioner's Regulations[2] promulgated pursuant to that authority permit a dealer in securities to use the inventory method to determine income. In defining the term "dealer in securities" the Commissioner has ruled[3]: "* * * For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation, irrespective of whether such buying or selling constitutes the carrying on of a trade or business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule."

This regulation has been interpreted to require that the taxpayer, in order to be classified as a dealer, hold himself forth as a merchant in securities, in the sense that he must carry a stock of goods to be sold to customers as they appear. Leach Corporation v. Blacklidge, D.C., 23 F.Supp. 622. There must be an offering of wares to customers with a primary view to a distributing profit which may be derived from a middleman operation in securities. United States v. Chinook Inv. Co., 9 Cir., 136 F.2d 984. Therefore, it is essential that there appear an element of resale to regular customers who

---

[1] Act of June 22, 1936, c. 690, Title I, § 22(c), 49 Stat. 1658, 26 U.S.C.A. Int. Rev.Code, § 22(c):
"Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

[2] Regulation 94 (1936 Ed.), Art. 22(c)—5.

[3] Regulation 94 (1936 Ed.), Art. 22(c)—5.

repeatedly buy from the taxpayer and that the taxpayer maintain a supply of securities which he offers for sale to these customers. Shafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101. Where the taxpayer holds the securities for the income which they are expected to yield rather than for the profit which he hopes to obtain on resale to customers, he is considered an investor and not a dealer in securities. United States v. Chinook Inv. Co., supra. Likewise, a broker who buys and sells securities on the customer's order acting as an agent and deriving his income from commissions is not considered a dealer in securities. Seely v. Helvering, 2 Cir., 77 F.2d 323.

The taxpayer may be a dealer or merchant as to one class of securities and at the same time he may be holding other securities as to which he is not a dealer in securities. Hartiman National Bank v. Commissioner of Internal Revenue, 2 Cir., 43 F.2d 950; Hammitt v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 494. It is therefore the duty of this Court to determine whether the taxpayer purchased and held the municipal bonds, the government bonds and notes, and the industrial and railroad securities, not for investment or speculation, but for resale at profit to regular customers as a dealer in securities. Commissioner of Internal Revenue v. Charavay, 3 Cir., 79 F.2d 406; Oil Shares, Inc., v. Commissioner of Internal Revenue, 29 B.T.A. 664. If taxpayer was a dealer in securities within the meaning of the Regulation, the securities were proper inventory items and plaintiff may not recover any portion of the income tax paid for the calendar year of 1936.

However, plaintiff urges that, as to the three groups of securities, he was an investor for his own account and not a dealer; that he was therefore not entitled to include these securities in the closing inventory; that his income for tax purposes was improperly inflated by the erroneous inclusion of these securities in the closing inventory; and that he is entitled to recover the income tax paid on the excessive income reflected in his 1936 income tax return and the assessment made by the Commissioner.

Section 22(c) of the Revenue Code delegates virtually complete discretionary authority to the Commissioner in the field of inventories, Riverside Mfg. Co. v. United States, 67 Ct.Cl. 117, certiorari denied 279 U.S. 863, 49 S.Ct. 479, 73 L. Ed. 1002. Where the Commissioner has exercised his authority, the burden rests upon the taxpayer to show that the Commissioner's action was plainly arbitrary or capricious before his decision can be reversed. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848; Swift Mfg. Co. v. United States, 12 F.Supp. 453, 81 Ct.Cl. 932; Finance & Guaranty Co. v. Commissioner of Internal Revenue, 4 Cir., 50 F.2d 1061. The determination of the Commissioner is prima facie correct and it can be overcome only by clear and convincing proof of error. Louisville Cooperage Co. v. Commissioner of Internal Revenue, 6 Cir., 47 F.2d 599; Wood & Ewer Co. v. Ham, D.C., 14 F.2d 995. Therefore it is incumbent upon plaintiff to prove that the Commissioner's determination that plaintiff was a dealer in securities and that the securities were proper inventory items was arbitrary and capricious. He has not sustained this burden.

Plaintiff conducted his securities operations as "Edward Lowber Stokes & Co." with the principal office in Philadelphia and branch offices in New York City and Boston. The company was listed in "Security Dealers of North America," a trade publication, as participating distributors and dealers in municipal, railroad and public utility bonds. The company made offerings of municipal bonds in the "Blue List of Current Municipal Offerings," a trade publication in which purchases of securities were solicited by dealers. Taxpayer regularly sold his securities to a group of securities dealers and brokerage houses. They were his customers to whom he sold, without distinction, acknowledged trading securities together with the securities which he now claims were held for investment. Helvering v. Fried, 299 U.S. 175, 57 S.Ct. 150, 81 L.Ed. 104.

Throughout the calendar year of 1936 the alleged investment securities were commingled with other trading items on the taxpayer's books. The books showed no distinction between investment and trading securities. Practically all securities, regardless of character, were placed on loan with the Fidelity-Philadelphia Trust Company and the Chase National Bank. There was nothing in the method of handling the securities, whether in bookkeeping methods, financing, or purchases and sales, which would show objectively

any clear line of demarcation between the securities admittedly held for resale and the securities which taxpayer now claims were held for investment purposes.

Plaintiff contends that he always intended to hold the securities in question as investment items. He urges that he should not have been required to pay an inflated tax merely because the investment character of the securities was not clearly indicated on his books of account. Prior to 1931, when the partnership was an active dealer in securities, the bookkeeping system efficiently reflected the merchandising of securities and the inventories of stock on hand. After the retirement of plaintiff's brother from the partnership, the argument continues, plaintiff shifted his activities from merchandising to investing on his own account. It never occurred to him that this change in the nature of his business necessitated a change in the system of accounts in order to separate the investment items.

This alleged subjective intent is inconsistent with much of the evidence produced. Plaintiff had expert accounting advice available at all times. It is inconceivable that his accountants were unfamiliar with rulings of the Commissioner and with the necessity of separating investment items. During this entire period plaintiff carried a separate personal account on his books but, strangely enough, failed to carry therein any of the securities he now claims to be investments.

The fact that almost the entire purchase price of the securities was borrowed from banks is inconsistent with an intention to hold the securities for investment purposes. The slightest fluctuation in the market would require disposal of the securities. It is of little significance that plaintiff held the securities over a period of months before their sale early in 1937. If a security is rising on the market, it is ordinary business practice among dealers to hold the security to reap the profits of the "bull market." In every business in which property is bought and sold there is an unavoidable element of investment and speculation. United States v. Chinook Inv. Co., supra, but the fact that a dealer in securities may avail himself of this element when it inures to his advantage does not, ipso facto, make him an investor or speculator.

Although plaintiff obtained income from the difference between the interest and coupon rate of the securities and the low interest charged by the lending banks, this did not serve to distinguish the securities as investments. This earning on the "carry" is regarded as an integral part of their business by all dealers in securities and the mere fact that this margin was relatively high in 1936 did not make the taxpayer an investor.

A basic requirement under Section 22(c) of the Revenue Act is that use of inventories must clearly reflect income. Trojan Powder Co. v. United States, 13 F.Supp. 61, 82 Ct.Cl. 312. It is essential to attain a clear reflection of income that the inventory practice of a taxpayer be consistent from year to year. Pittsburgh Bridge & Iron Works, Inc., v. Heiner, D.C., 25 F.2d 900. To assure consistency Regulation 94, Article 41—2 provides a method for withdrawal from the inventory system, requiring that one seeking withdrawal from the inventory system obtain the approval of the Commissioner and adjust his inventory so that the new accounting method will clearly reflect income. Plaintiff cannot disregard the Regulation and arbitrarily withdraw securities from inventory to avoid the effect of a rising stock market upon the income reflected by inventory. Nor is he entitled to aid from this Court in an action brought to obtain substantially the same result.

The weight of the evidence leads to a conclusion that plaintiff was a "dealer in securities" as defined in Regulation 94, Article 22(C)—5, with regard to all of the securities in issue. Plaintiff's income tax for 1936, which included the inventory income on the United States Treasury bonds and notes and the miscellaneous industrial and railroad bonds and stocks, and the Commissioner's assessment for the inventory income on the municipal bonds which were withdrawn from inventory by the taxpayer, were properly computed. Judgment must be for defendant.

I make the following

### Conclusions of Law

1. Plaintiff was a dealer in securities as defined in Treasury Regulation 94, Article 22(C)—5, with respect to the municipal bonds, United States Treasury bonds and notes, and the miscellaneous railroad and industrial securities.

2. The United States Treasury bonds and notes and the miscellaneous railroad and industrial securities were properly in-

cluded in the closing inventory of December 31, 1936, for the purpose of computing plaintiff's income for tax purposes for the calendar year 1936.

3. The additional assessment for 1936 by the Commissioner of Internal Revenue based upon plaintiff's failure to include the municipal bonds in the closing inventory was properly assessed.

4. Judgment may be entered for the defendant.