**TRADING ASSOCIATES CORPORATION
v. MAGRUDER, Collector of Internal
Revenue.**

**No. 300.**

District Court, D. Maryland.

Jan. 8, 1940.

France, Rouzer & Lentz, and Kenneth C. Proctor, all of Baltimore, Md., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, and Edward First,

Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a suit to recover additional income taxes assessed for the year 1935 against the plaintiff, as a personal holding company, in the amount of $6,906.47, under Section 351(b) 1, of the Revenue Act of 1934, 26 U.S.C.A. § 331(b) (1), and paid by the plaintiff under protest. This Section of the Act reads as follows: "(1) The term 'personal holding company' means any corporation (other than a corporation exempt from taxation under section 101 [103], and other than a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits, and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *"

The sole question before the court is whether the plaintiff was a "regular dealer in stock or securities" at the time the tax was levied. If it was, it is to be excepted from the provisions of the Act, because, as stipulated in the present case, although it was within the definition of the Act as to ownership of its stock, 80 per cent of the plaintiff's gross income for the particular taxable year was not derived from the sources stipulated in the Act, if there be excepted the "gains from the sale of stock or securities" by the company.

The words "regular dealers in stock or securities", contained in the Act are not therein defined, nor does it appear that this part of the Act has ever been construed by any reported decision. However, a regulation of the Commissioner of Internal Revenue, No. 86, Article 351-352 (5), in effect at the time of the assessment, defines this term as follows: "The term 'regular dealers in stock or securities' means corporations with an established place of business regularly engaged in the purchase of stock or securities, and their resale to customers. A corporation which is a regular dealer in stock or securities but which buys or sells or holds stock or securities for investment or speculation is not a dealer with respect to such stock or securities." This regulation was amended in 1937, and now appears as regulation 94, Article 351-352, as follows: "The term 'regular dealers in stock or securities' means corporations with an established place of business regularly engaged in the purchase of stock or securities and their resale to customers. Such corporations are not dealers with respect to stock or securities held for speculation or investment." Little importance attaches to this slight amendment. It merely clarifies the last sentence of the earlier regulation, which was reasonably clear.

It is axiomatic that regulations of an administrative body do not control, if they are not in conformity with a proper interpretation of the law which they purport to construe. In other words, such regulations are not to be given the force of law unless they really carry out the intent of the legislative body, as expressed in the law itself. However, it is believed that the regulation in effect in 1935 does correctly state what is to be taken as the reasonable interpretation of the words "regular dealers in stock and securities", as contained in the law.

The following facts, stipulated in the present controversy, are material to the precise issue. The plaintiff company was incorporated under the laws of Delaware in 1931 with very broad charter powers, which authorize it, among other things, to deal in securities of all kinds. As of December 31, 1935, the total number of plaintiff company's shares of stock outstanding was 5,082, and as of the same date the amount paid for these shares appeared on plaintiff's books to be as follows: Paid-in capital, $50,820; paid-in capital surplus, $76,491. During the year ended December 31, 1935, plaintiff made all of its purchases and sales through a brokerage firm known as Belden & Company, and employed no salesmen to consummate these sales. In the year 1935, plaintiff company made 371 separate purchases of securities totaling $1,215,636.42, and 343 separate sales of securities totaling $1,201,810.28. The cost of the securities sold in the year 1935 was $1,136,525.65, and the profit realized on the sales in that year was $65,284.63. Of

the 343 sales transactions, 35 transactions, in the aggregate amount of $100,547.30, were short sales of securities, all of which were covered during that year.

In this same year 1935, the plaintiff company's income from dividends was $2,015.02, and from interest, $1,931.16. It had no other income in that year except the sum of $24.70, representing premium on the loan of stock. The aggregate value, at cost, of securities held by plaintiff company at the close of the year 1935 was $165,559.34. All of the securities owned by the plaintiff company as of January 1, 1935, were sold or exchanged during the year 1935, except 300 shares of General Aviation Corporation stock, which had been acquired in December, 1934, and which were of no value as of December 31, 1935. The plaintiff company declared and paid a dividend in the year 1935 in the aggregate amount of $25,410. As of October 1, 1935, its outstanding stock consisted of 5,082 shares of the par value of $10 a share, held by nineteen persons, of which 2,832 shares were held by or for five individuals,—thus coming within the provisions of Section 351 of the Revenue Act of 1934,—and the remaining 2,250 shares were held by fourteen different persons.

Summarizing the contention of counsel for the plaintiff company, it may be stated to be substantially this: that in the present Act, by using the words "regular dealers in stock or securities", it was never intended to embrace thereunder persons who got together in a bona fide way for the purpose of dealing in securities, as the present shareholders did, and where their business is an operating one, that is, operating in the sense of buying and selling securities of various kinds, even though their sole purpose in so doing was one of speculation for their own ultimate profit, and even though they actually handled no sales or purchases for persons other than themselves, although there is some testimony in the case that they might have done it.

█ This contention, it seems to the Court, is not tenable in view of the fact that the Court finds no ambiguity in the words in question. When one speaks of "a regular dealer," such implies one who holds himself out to accommodate any customer, new or old,—i.e., the public generally,—who might apply for services in connection with the particular type of business. Therefore, the regulation of the Treasury Department is a substantially accurate statement of what must have been intended by Congress when it put this exception in the Act.

Without quoting, or attempting to analyze, in detail, the statements of the drafters of the law, which were made at the time the Act was under consideration in Congress, suffice it to say that there is nothing in the language employed which calls for a different interpretation. It is true that income from real estate,—rents,—was intentionally excluded, but that proves nothing for the purposes of the present inquiry.

It is pertinent to point out that a similar phrase, "dealer in securities", was contained in Section 118 of the Revenue Act of 1928, 26 U.S.C.A. § 118, and although it appears not to have been construed by any reported court decision, it was construed by the Board of Tax Appeals in the case of Donander Company v. Commissioner of Internal Revenue, 29 B.T.A. 312.

There the question was whether certain losses sustained by the sale of stock were allowable as deductions, the 30-day, or "wash-sale" provision, being the one in the Act that was under consideration. The petitioning company made a claim similar to the one being made by the present plaintiff. It did not contend that it was a dealer in securities within the meaning of Article 105 of Regulations 74, which reads as follows: " * * * For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or who hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacity buy and sell securities, are not dealers in securities within the meaning of this rule." But Donander & Company did contend it was a dealer in securities

within the meaning of Article 661 of Regulations 74, which reads as follows: " * * * A taxpayer, other than one in the trade or business of buying and selling securities, can not deduct any loss claimed to have been sustained from the sale or other disposition of stock or securities, if within thirty days before or after the date of such sale or other disposition he has acquired (otherwise than by bequest or inheritance), or has entered into a contract or option to acquire, substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition. * * * This provision is designed to prevent a taxpayer who owns securities, other than one in the trade or business of buying and selling securities, from claiming as a deduction in computing net income the so-called 'loss' sustained from a sale of securities which is immediately followed or immediately preceded by a purchase of substantially identical securities. * * * "

While the precise question before the Board of Tax Appeals in the Donander Company case was not the same as the one here, nevertheless the following concluding paragraph of the Board's opinion in that case seems to be particularly pertinent to the issue here, because the phrase construed in the different regulations is substantially the same in each case. The Board said, 29 B.T.A. page 314: "The term 'dealer in securities' as used in section 118 of the Revenue Act of 1928 is not defined by the statute. The respondent contends that his definition for 'dealer in securities' contained in article 105 of Regulations 74, which reads, 'a dealer in securities is a merchant of securities, whether an individual, partnership or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers,' is applicable. We agree. In our opinion an investor or speculator who buys and sells securities on a stock exchange only is not a dealer in securities within the contemplation of the statute, regardless of the number of purchases and sales. Likewise we think that a corporation such as the petitioner, which carries on an investment business for its own profit and buys and sells shares of stock and other securities upon stock exchanges, is not a dealer in securities. The term rather has application to a merchant who holds himself out to sell to customers. If Congress had intended the word 'dealer' to include a speculator or investor, we think that it would have used language which would more aptly convey that thought than does the language used. It was apparently the intention of Congress that a corporation which sells securities and repurchases them within a period of 30 days should not be permitted to deduct a loss in respect of the sale, but that the repurchased securities should stand in the stead of those which were sold. The respondent has so interpreted the law. Article 602, Regulations 74."

In the absence of some construction to the contrary that would be controlling I am disposed to adopt, in substance, the reasoning of the Board of Tax Appeals, in the case just referred to, in construing a similar phrase. That being true, it becomes unnecessary to analyze any of the various dictionary definitions, or other suggestions, that have been raised in the course of the present trial.

The statute, of course, has basic arbitrary features. The present ruling may appear to inflict undue hardship upon the plaintiff company, since other companies, doing the same thing may be exempt from the law, merely because their stock is owned by a greater number of persons. But that is a question that relates to the character, or policy, of the law itself, and to other features of it, rather than to the particular point here at issue.

To summarize, Congress must have meant, when it put this particular phrase in the Act, that there should be excluded from the effect of the Act only those who were doing the sort of business in stocks and bonds which is usually contemplated by the term "investment brokers", or "stock and bond brokers", i.e., persons or corporations licensed to deal, and actually dealing with the general public in the purchase and sale of securities. The plaintiff company never had such dealings, nor was it licensed to have them.

Verdict for the defendant, with costs.