### TRADING ASSOCIATES CORPORATION v. MAGRUDER, Collector of Internal Revenue.

### No. 4621.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1940.

Kenneth C. Proctor, of Baltimore, Md. (E. McClure Rouzer and France, Rouzer & Lentz, all of Baltimore, Md., on the brief), for appellant.

Edward First, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Seawell Key, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a civil action instituted in August, 1939, by the appellant, Trading Associates Corporation, a corporation, here referred to as the plaintiff, against the appellee, M. Hampton Magruder, Collector of Internal Revenue for the District of Maryland, here referred to as the defendant, in the District Court of the United States for the District of Maryland. 30 F.Supp. 978. The object of the action was to recover the sum of $6,906.47 (principal and interest) paid by the plaintiff under protest as an additional assessment for income taxes for the year 1935. A trial was had before the court in January, 1940; the judge below found for the defendant and judgment was entered in his favor. From this action the plaintiff brought this appeal.

There is no dispute as to the facts which were stipulated. The plaintiff company was incorporated in July, 1931, under the laws of the State of Delaware, having its principal office and place of business in the City of Baltimore, Maryland. It began business in the year 1932 and was actively engaged in buying and selling stocks, bonds and other securities from the date of the commencement of its business through the year 1935. During this period all of its purchases and sales were made through one brokerage firm, it employed no salesmen. In the year 1935 plaintiff made 371 separate purchases of securities, totalling $1,215,636.42, and 343 separate sales of securities, aggregating $1,201,810.28. The plaintiff's income for the year 1935 was $69,255.51, and in that year it declared and paid dividends in the aggregate amount of $25,410.00.

As of October 1, 1935, the outstanding stock of plaintiff consisted of 5,082 shares of the par value of $10 per share, held by 19 persons, of which 2,832 shares were held by or for 5 individuals and the remaining 2,250 shares were held by 14 different persons.

In April, 1938, the plaintiff was advised of an additional tax liability for the year 1935 in the amount of $6,083.24. The plaintiff protested against the proposed assessment and a hearing was held and the plaintiff was advised that its protest was disallowed. The additional tax was paid by the plaintiff, under protest, in June, 1938, and in August, 1938, a claim was filed for refund. After a period of more than six months had elapsed since the filing of the claim, this action was instituted.

The Revenue Act of 1934 imposed a surtax upon the undistributed adjusted net income of every personal holding company. Section 351(a), 26 U.S.C.A. Int.Rev.Acts, page 757. The term "personal holding company" was defined (Section 351(b) as any corporation (other than certain exempted corporations) if—"(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

Treasury Regulations 86, promulgated under the Revenue Act of 1934, provides:

"Art. 351–2. Classification of a Personal Holding Company.—A personal holding company is defined as any corporation (other than a corporation specifically exempt), first, 80 per cent or more of whose gross income for the taxable year was derived from royalties, dividends, interest, annuities, and gains from the sale of stock or securities; and, second, more than 50 per cent in value of whose outstanding stock was owned, directly or indirectly, at any time during the last half of the taxable year by or for not more than five individuals. The only corporations specifically exempt from this tax are as follows: (1) Corporations exempt from taxation under section 101 of Title 1; (2) banks and trust companies (incorporated under the laws of the United States, or of any State or Territory), a substantial part of whose business is the receipt of deposits; (3) life insurance companies; and (4) surety companies.

"It is the nature of the gross income and the ownership of the outstanding stock which determine the classification as a personal holding company, and the several conditions with respect to both must be satisfied to bring a corporation within the classification. Gross income must be determined for the entire taxable year and the ownership of the stock outstanding must be determined according to its ownership at any time during the last half of the taxable year. Inasmuch as such circumstances can vary from year to year, a corporation may constitute a personal holding company for some years and not for other years. In that case, the surtax liability shall be determined under section 351 only for the years in which the corporation comes within the classification as a personal holding company, while the liability for surtax as to the other years will depend upon whether the corporation comes within the provisions of section 102 with respect to such years.

\* \* \*

"(5) Gains from the sale of stock or securities.—The term 'gains from the sale of stock or securities' applies to all gains (including gains from liquidating dividends and other distributions from capital) from the sale or exchange of stock or securities includible in gross income under Title I.

\* \* \*

"In the case of 'regular dealers in stock or securities' the term does not include gains derived from the sale or exchange of stock or securities made in the normal course of business. The term 'regular dealers in stocks or securities' means corporations with an established place of business regularly engaged in the purchase of stock or securities and their resale to customers. A corporation which is a regular dealer in stock or securities but which buys or sells or holds stock or securities for investment or speculation is not a dealer with respect to such stock or securities.

"From the standpoint of the ownership of the outstanding stock, a corporation comes within the definition of a personal holding company for any taxable year if at any time during the last half of the taxable year more than 50 per cent in value of the outstanding stock was owned, directly or indirectly, by or for not more than five individuals."

■ The sole question involved in this appeal is whether the plaintiff was, in the year 1935, a regular dealer in stock or securities within the meaning of section 351(b) (1) (B) of the Revenue Act of 1934 and as such excepted from the provisions of that Act.

We are of the opinion that the taxpayer does not come within the definition of the term "regular dealers in stock or securities" as used in the Act. It did not purchase stock or securities for sale to customers but for resale in the open market when it thought such purchase or sale was profitable. It bought and sold stock for speculation and investment on its own account and conducted all its transactions in stock and securities through one firm of brokers.

Treasury Regulations 86, promulgated pursuant to the Revenue Act of 1934, conforms to the provisions of that Act and in no way alters or amends the Act itself. The definition of the phrase "dealer in securities" given in the Regulations is essentially similar to that given in all the Regulations promulgated under the various Revenue Acts since the Act of 1918. This definition as used has been sustained and applied by the courts. Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101; Hammitt v. Commissioner, 3 Cir., 79 F.2d 494; Seeley v. Helvering, 2 Cir., 77 F.2d 323; Wilson v. Commissioner, 10

Cir., 76 F.2d 476; Leach Corporation v. Blacklidge, D.C., 23 F.Supp. 622.

This line of decisions has also been followed in a number of cases decided by the Board of Tax Appeals. Northeastern Surety Co. v. Commissioner, 29 B. T. A. 297; Oil Shares Inc. v. Commissioner, 29 B. T. A. 664; Adirondack Securities Corp. v. Commissioner, 23 B. T. A. 61.

In Schafer v. Helvering, supra, the Supreme Court said [299 U.S. 171, 57 S.Ct. 150, 81 L.Ed. 101]: "The Board of Tax Appeals found: 'The stocks in dispute were purchased for the firm's own account solely in expectation of a rise in the market, for sale to anyone at a profit, "as distinguished from a purchase to create a stock of securities to take care of future buying orders in excess of selling orders." ' 'They were purchased solely in expectation of a rise in the market, for the partnership's own account for resale, to any buyer, at a profit. The meaning of "dealer in securities," as defined in the controlling regulation, has been considered many times by the courts, and this Board. It is limited to one who, as a merchant, buys and sells securities to customers for the profit thereon.' "

At least 80 per centum of taxpayer's gross income for the taxable year in question was derived from dividends, interest, and gains from sale of stock or securities; and at a period during the last half of the year more than 50 per centum in value of its outstanding stock was owned by not more than 5 individuals. The capital and surplus of the taxpayer corporation was used solely for speculative and investment purposes and it was not a "dealer in stock or securities" within the meaning of the Revenue Act of 1934, but was a holding company within the meaning of that Act.

As was said by the judge below in his well reasoned opinion [30 F.Supp. 981]: "To summarize, Congress must have meant, when it put this particular phrase in the Act, that there should be excluded from the effect of the Act only those who were doing the sort of business in stocks and bonds which is usually contemplated by the term 'investment brokers', or 'stock and bond brokers', i. e., persons or corporations licensed to deal, and actually dealing with the general public in the purchase and sale of securities. The plaintiff com-

pany never had such dealings, nor was it licensed to have them."

The tax sought to be recovered by the plaintiff was lawfully assessed and paid. The judgment of the court below is accordingly affirmed.

Affirmed.