## UNITED STATES v. CHINOOK INV. CO.

No. 10324.

Circuit Court of Appeals, Ninth Circuit.

July 9, 1943.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., Sewall Key, Willard H. Pedrick, and Helen Goodner, Sp. Assts. to Atty. Gen., and Carl C. Donaugh, U. S. Atty., and James H. Hazlett, Asst. U. S. Atty., both of Portland, Or., for appellant.

S. J. Bischoff and Robert T. Jacob, both of Portland, Or., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The primary question here is whether losses sustained by appellee taxpayer in the years 1936 and 1937 were losses from the sale of "capital assets," as that term is defined in § 117(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 874.

Appellee was organized under the laws of Oregon "to own, buy, sell, or to acquire by sale, trade or exchange," bonds, stocks, and other securities, and to exercise while the owner thereof all the rights a natural person would have in the premises. For many years it regularly followed that calling, maintaining an office for the transaction of its business and buying and selling upwards of $300,000 worth of securities yearly. Its management kept in close touch with the market, subscribed to financial periodicals, and bought and sold securities at private sale, "at random," "over the counter," and "listed securities." Unlisted securities dealt in were sometimes those of local companies with whose business the taxpayer was familiar. Purchases were often made direct from the owners of stock, and taxpayer was frequently approached by brokers who had securities to buy or sell. Persons or concerns believed to be interested in making sales or purchases were solicited, and securities were bought or sold when it was thought the market justified. The transactions were not on margin, but for cash, and there was a capital turn-over about once each year. In the acquisition of securities, "investment was not the idea of the Company."

In the years in question appellee sustained losses as the result of which no net profits were realized in the business. The Commissioner assessed a deficiency for 1936 as a surtax on undistributed profits, and for 1937 assessed a deficiency as a personal holding company tax on undistributed profits, claiming that the losses were on sales of capital assets, hence were deductible only to the extent of $2,000 for each year. Appellee paid the assessments and brought suit for refund, recovering judgment for the amount of its claims.

Section 117(b) of the 1936 Act defines capital assets thus: "For the purposes of

this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, *or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.*" [Emphasis supplied.]

The court found that during the tax years appellee was regularly engaged in the business of buying and selling stocks and bonds, and that the securities dealt in were held primarily for sale to customers in the ordinary course of the taxpayer's business, and not for investment or speculation. The Commissioner contends that the finding is not supported by the evidence. More specifically, he argues that the securities bought and sold were held by the taxpayer for investment or speculation. He says that the exception in § 117(b) of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" does not extend to securities held by a speculator or investor, however active his trading. The Commissioner relies on Art. 22(c)-5 of Treasury Regulations 94, promulgated under the Revenue Act of 1936, relating to "inventories by dealers in securities." This Article states that taxpayers who buy and sell or hold securities for investment or speculation are not dealers in securities "within the meaning of this rule," irrespective of whether such buying or selling constitutes the carrying on of a trade or business.

While the problem is obscure, we doubt the relevancy of the regulation. The question before us relates to the status of assets rather than to the status of the taxpayer. The regulation has to do merely with inventories of dealers in securities, and there is here no question of inventories. Section 117(b) is not concerned with securities alone, but deals with all "property"; and certainly securities are property. Like other species of property, they are eliminated from the statutory definition of capital assets if they belong in the category of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The statute

appears to speak for itself.[1] The decisions in Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101; Vaughan v. Commissioner, 2 Cir., 85 F.2d 497; and Trading Associates Corp. v. Magruder, 4 Cir., 112 F.2d 779, relied on by the Commissioner, are not decisive of the point. The case of Commissioner v. Burnett, 5 Cir., 118 F.2d 659, appears to suppport the view that the regulation is controlling.

However, as above indicated, the court found that the securities were held by the taxpayer primarily for sale to customers in the ordinary course of its business, and not for investment or speculation. While the case is a close one on its facts, we are not prepared to say that the finding is clearly erroneous. There is an element of investment as well as an unavoidable element of speculation in every business in which property, whether tangible or intangible, is regularly bought and sold. The "in-and-out" market hanger-on who buys and sells through brokers on margin is a typical example of the pure speculator in stocks. Cf. Commissioner v. Burnett, 5 Cir., 118 F.2d 659. On the other hand, an investor *is ordinarily thought to be a person who* acquires property for the income it will yield rather than for the profit he hopes to obtain on a resale. Appellee appears to belong less in either of these categories than in the category of a dealer. While it dealt in intangibles associated in the popular mind with speculation or investment, nevertheless it carried on a regular business roughly comparable with that of a dealer in hogs or cattle or town lots, finding its customers where it could. Compare cases cited in note 1.

If the situation here had been the other way around, that is to say, if the transactions had resulted in gains instead of losses, it would not be surprising to find the Commissioner occupying the position now championed by the taxpayer, and vice versa. So things are apt to go in the domain of tax litigation.

Our conclusion in these respects makes it unnecessary to consider other questions discussed by counsel.

Affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.

---

[1] Cf. decisions of this court in Ehrman v. Commissioner, 120 F.2d 607, 610; Commissioner v. Boeing, 106 F.2d 305; Jackson v. United States, 110 F.2d 574; Richards v. Commissioner, 81 F.2d 369, 106 A.L.R. 249; Miller v. Commissioner, 102 F.2d 476.