## GEORGE E. WARREN CO. v. UNITED STATES.

### Civ. A. No. 1779.

District Court, D. Massachusetts.

Jan. 28, 1944.

Thomas H. Walsh, of Boston, Mass., and Robert P. Smith, William Ristig, and Smith, Deibert & Ristig, all of Washington, D. C., for plaintiff.

Harold D. Cohen, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendant.

580

SWEENEY, District Judge.

In this action the taxpayer seeks to recover income taxes which it alleges were collected from it illegally. The taxes were paid under the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 819 et seq., but the taxpayer seeks to have the benefit of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, which was made retroactively applicable to the 1936 Act. The Government denies that the taxes were illegally assessed and collected, and further denies the right of the petitioner to claim the benefits of the Revenue Act of 1942, because the conditions precedent to its right to maintain the action in this court under that Act have not been fulfilled.

### Findings of Fact

The taxpayer is a corporation organized under the laws of the State of Maine, and has a principal place of business in Massachusetts. Prior to 1921, the taxpayer was engaged in the coal business, and at that time transferred its coal business to a new corporation, and from then on its only business was the purchase and sale of securities. Substantially all of its assets consisted of stocks and securities. In 1921 the corporation declared a 900 per cent. stock dividend, raising its capitalization from $100,000 to $1,000,000.

In 1935 two-thirds of the stock in the taxpayer corporation was held by one George Warren. He died, and, in order to liquidate his estate, it became necessary to convert into cash his holdings in the plaintiff corporation. Consequently, an agreement was reached between the executor of his estate and the corporation whereby the executor agreed to turn back to the corporation all of the stock that the executor held in exchange for two-thirds of the liquidation value of the corporation. That contract was entered into on December 30, 1935, and was to be consummated on or before February 1, 1936. Thereafter, the taxpayer corporation sold securities to the extent of $769,371.97. Of this amount $592,515 was paid to the executor of Warren's estate in exchange for his two-thirds stock interest in the corporation. In the tax return which the corporation filed for the year 1936 it disclosed that it had a gross income for income tax purposes of $49,053.18. This was made up of interest on bonds, bank deposits, etc., and dividends from corporations. The authorized deduction for salaries, interest, taxes and other fees was in the amount of $14,736.-83, showing a net income for income tax purposes of $34,316.35.

When the taxpayer filed its return, it claimed a credit of $525,056.96, as a dividend paid credit. This was disallowed by the Commissioner as a preferential distribution prohibited by Section 27 (g) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 838. I do not understand that the taxpayer now claims that the Commissioner's decision in this regard was incorrect, but, if so, I find that under the circumstances of this distribution the amount paid to the executor of the Warren estate could not be used as a dividend credit since the distribution was not pro rata to all holders of the stock in the corporation.

The taxpayer's next contention is that under Section 26(c), 26 U.S.C.A. Int.Rev. Acts, page 836, it was entitled to use this amount as a credit since it was bound to pay it by reason of a written contract with the executor of the Warren estate.

Section 26 of the Revenue Act of 1936 reads as follows:

"§ 26. Credits of corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—* * *

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed; and for such purpose if two or more credits are equal in amount only one shall be taken into account.

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provi-

sion expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

It is to be noted that (c) (1) refers to contracts which expressly deal with the payment of dividends. (c) (2) deals with the distribution of earnings and profits to be paid within the taxable year in discharge of a debt or to be set aside for the discharge of a debt. The contract involved herein is not within the purview of either of these sections. Certainly the retirement of the Warren stock was not a dividend paid so as to bring it within (c) (1), and the purchase of the Warren stock by the corporation was not a contract whose provisions expressly dealt with earnings and profits so as to be within (c) (2). As held in Helvering v. Northwest Steel Mills, 311 U.S. 46, 50, 61 S.Ct. 109, 112, 85 L.Ed. 29, the credits under 26(c) are applicable only to "routine contracts dealing with ordinary debts." The voluntary or involuntary agreement of a corporation to purchase its own stock would stand in no different light than the retirement of preferred stock, and certainly it could not be successfully argued that such an arrangement can come within the purview of this section. Haffenreffer Brewing Co. v. Commissioner, 1 Cir., 116 F.2d 465, 471. I therefore find that the plaintiff taxpayer was not entitled to a credit under Section 26 (c) of the Revenue Act of 1936.

The taxpayer also contends that a loss in the amount of $312,949.48 sustained by it in the sale of its securities entitled it to a deduction from its gross income which, if allowed, would make the corporation non-taxable for the year. Section 23 (f) of the Revenue Act of 1936, 26 U. S.C.A. Int.Rev.Acts, page 828, does provide that: "In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise" shall be allowed as deductions. If we could consider this section alone,

there might be some substance to the taxpayer's contention, but Section 117 (d), of the same Revenue Act, 26 U.S.C.A. Int. Rev.Acts, page 875, sets out a limitation on capital losses such as this taxpayer suffered. Section 117 (d) allows "losses from sales or exchanges of capital assets * * * only to the extent of $2,000." But the taxpayer contends that 117 (b) exempts its losses from the limitation of $2,000. Section 117 (b) states, in defining the words "capital assets", that it "does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Treasury Regulations 94, which were promulgated under the Revenue Act of 1936, in Article 22 (c)-5, limits those who may keep inventories under Section 117 to dealers in securities as that term is commonly understood; that is, to stockbrokers, bond houses, etc. These Regulations have been sustained. See Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101; Vaughan v. Commissioner, 2 Cir., 85 F.2d 497; Seeley v. Helvering, 2 Cir., 77 F.2d 323; Trading Associates Corporation v. Magruder, 4 Cir., 112 F.2d 779. The taxpayer in the instant case was buying for investment or speculation and was not a dealer within the purview of the Statute and Regulations. See Commissioner v. Burnett, 5 Cir., 118 F.2d 659.

The taxpayer's next contention is that it is within the second exemption of Section 117(b) in that it held its property "primarily for sale to customers in the ordinary course of his trade or business." This contention is likewise untenable. The taxpayer did not have the status of a dealer. It had no customers. It had no ordinary course of trade or business. It merely bought and sold securities for itself for its own profit or loss. While it may be contended that each time it sold the securities it dealt with a customer, such is not true within a fair reading of the taxing statute. The decision in Commissioner v. Purdy, 1 Cir., 102 F.2d 331, which was written by the writer of this opinion, is not applicable, for since the Purdy decision the reading of the exemption clause has been materially changed. It was the intent of Congress by that

change to limit the applicability of the exemption to merchants or dealers in securities.

■ The only other contention of the plaintiff, namely, that, by virtue of Section 501 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, it was entitled to a credit by reason of its inability to pay a dividend, because it was a deficit corporation and so prohibited by the State of Maine, is not open to disposition here. At the time that the Commissioner passed upon the taxpayer's claim for refund it was, of course, considered only in the light of the Revenue Act of 1936, for, at that time, the Revenue Act of 1942 had not been passed. There was no provision in the Revenue Act of 1936 for additional credit for undistributed profits tax such as is contained in Section 501 of the Revenue Act of 1942, and the taxpayer's claim was properly denied under the 1936 Act. After the passage of the Revenue Act of 1942, the taxpayer did file a claim seeking the benefits of Section 501 of that Act. This claim has not been denied by the Commissioner, nor has the statutory six month period elapsed since the filing of the claim. Consequently, this court, under 26 U.S.C.A. Int.Rev.Code, § 3772, has no jurisdiction to adjudicate this matter. While it may be true that the Act of 1942 in a measure reopens a claim that the taxpayer originally made, nevertheless, the possibilities of administrative relief have not been exhausted before application to the courts. It is well settled that this court has no authority to pass on tax refunds until after administrative relief has been denied or a sufficient period of time has elapsed within which the Commissioner might have acted. See United States v. Felt & Tarrant Co., 283 U.S. 269, 273, 51 S.Ct. 376, 75 L.Ed. 1025; Bryan v. United States, 10 Cir., 99 F.2d 549.

Conclusions of Law

(1) I conclude and rule that the taxpayer was not entitled to a dividend paid credit by reason of its payment to Warren, because such a payment would have been a preferential distribution which is prohibited by Section 27 (g) of the Revenue Act of 1936.

(2) I conclude and rule that the taxpayer was not entitled to a deduction under Section 26 (c) of the Revenue Act of 1936.

(3) I conclude and rule that the loss sustained by the taxpayer in the sale of its securities was a sale of capital assets within the meaning of Section 117 (d) of the Revenue Act of 1936.

(4) I conclude and rule that the taxpayer does not come within the provision of Section 117 (b) of the Revenue Act of 1936.

(5) I conclude and rule that the taxes in question were properly assessed by the Commissioner, and that the plaintiff is not entitled to recover in this action.

The action is to be dismissed with costs to the defendant.