OPINION. Arundell, Judge: The respondent has determined that securities disposed of by Lilley & Co. during the years in question were not capital assets within the definition of section 117 (a) (1) of the Internal Revenue Code and, therefore, the gain upon their sale or exchange is taxable as ordinary income pursuant to section 22 of the Code. The relevant portion of section 117 (a) (1) defines “capital assets” as “property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * In support of his determination, the respondent argues that Lilley & Co. was a “dealer” holding the securities primarily for sale to customers in the ordinary course of business. Whether or not securities are held primarily, for sale to customers in the ordianry course of business is a quetsion of fact, Stern Brothers & Co., 16 T. C. 295, in which the crucial phrase is “to customers.” This phrase and the word “ordinary” were added to the definition of capital assets by Senate Amendment No. 66 in the Revenue Act of 1934 so that a speculator trading on his own account could not claim the securities he sold were other than capital assets. The theory of the amendment was that those who sell securities on an exchange have no “customers” and for that reason the property held by such taxpayers is not within the above quoted exclusionary clause. O. L. Burnett, 40 B. T. A. 605, 118 F. 2d 659; Thomas E. Wood, 16 T. C. 213. In determining whether a seller of securities sells to “customers,” the merchant analogy has been employed. Schafer v. Helvering, 299 U. S. 171; Van Suetendael v. Commissioner, 152 F. 2d 654, affirming a Memorandum Opinion of this Court (Sept. 25, 1944); Leach Corp. v. Blacklidge, 23 F. Supp. 622; Warren Co. v. United States, 53 F. Supp. 578; Regulations 111, sec. 29.22 (c)-5. Those who sell “to customers” are comparable to a merchant in that they purchase their stock in trade, in this case securities, with the expectation of reselling at a profit, not because of a rise in value during the interval of time between purchase and resale, but merely because they have or hope to find a market of buyers who will purchase from them at a price in excess of their cost. This excess or mark-up represents remuneration for their labors as a middle man bringing together buyer and seller, and performing the usual services of retailer or wholesaler of goods. Cf. Schafer v. Helvering, supra; Securities-Allied Corp. v. Commissioner, 95 F. 2d 384, certiorari denied, 305 U. S. 617, affirming 36 B. T. A. 168; Commissioner v. Charavay, 79 F. 2d 406, affirming 29 B. T. A. 1255. Such, sellers are known as “dealers.” Contrasted to “dealers” are those sellers of securities who perform no such merchandising functions and whose status as to the source of supply is not significantly different from that of those to whom they sell. That is, the securities are as easily accessible to one as the other and the seller performs no services that need be compensated for by a mark-up of the price of the securities he sells. The sellers depend upon such circumstances as a rise in value or an advantageous purchase to enable them to sell at a price in excess of cost. Such sellers are known as “traders.” The securities sold by Lilley & Co. were held for widely varying lengths of time. Some were sold on the day of purchase; others were held for periods in excess of 3 years. We need not determine whether those held for not more than 6 months were capital assets. It may well be that as to them, the firm’s status was that of a dealer holding securities primarily for sale to customers, but since the gains on their sale were reported in full and the losses were not in excess of these gains, the correctness of the asserted deficiency in nowise depends upon whether or not the securities were capital assets. Furthermore, the fact that the firm’s status as to these securities was that of either a dealer or trader does not require a determination that the firm occupied the same status as to the remaining securities. Carl Marks & Co., 12 T. C. 1196. See I. T. 3891, 1948-1 C. B. 69. But whatever the firm’s status may be as to the securities held for not more than 6 months, the evidence taken as a whole clearly establishes that as to the remaining securities the firm was a trader holding them primarily for speculation or investment. Specific evidence has been submitted to show that a considerable number of the securities held for more than 6 months were accumulated as part of a program to force a reorganization and gain control of the issuing corporation, or for the realization of a gain when the issuing company redeemed them or issued liquidating dividends. Furthermore, as to these securities, it was the firm’s practice to buy in small lots and dispose of them in large blocks. It did not acquire them “to create a stock of securities to take care of future buying orders in excess of selling orders,” Schafer v. Helvering, supra, or always sell to a class of persons different than those from whom it bought. Cf. Van Suetendael v. Commissioner, supra. It frequently refused to sell these securities which it was accumulating despite the fact that the bid price would have resulted in a profit. The activity of Lilley & Co. with regard to the securities in question conformed to the customary activity of a trader in securities rather than that of a dealer holding securities primarily for sale to customers. Respondent has stressed other phases of the firm’s activity in support of his argument that the firm is a dealer in securities. He points out that the firm has two regular places of business, is licensed by the State of Pennsylvania as a “dealer,” advertises itself as a “dealer,” transacts a large volume of business, and subscribes to certain services commonly used by brokers and dealers. These are all significant facts which weigh against petitioners’ contention that the firm was a trader. But they are no more conclusive than are other facts which weigh just as heavily in favor of petitioners’ contention, such as the fact that the firm had no salesmen, no “customers’ men,” no customers’ accounts, no board room, and has never advertised itself or held itself out to the public as having on hand securities for sale. After weighing all such factors and analyzing the activity previously referred to, we are of the opinion that Lilley & Co.’s status as to those securities held for more than 6 months was that of a trader holding them for speculation or investment. Therefore, those securities are capital assets and the gain upon their sale or exchange is taxable at capital gains rates. Respondent relies on such cases as Edmund S. Twining, 32 B. T. A. 600, affd. on other points, 83 F. 2d 954, certiorari denied, 299 U. S. 578; Stokes v. Rothensies, 61 F. Supp. 444, affd., 154 F. 2d 1022, and Helvering v. Fried, 299 U. S. 175. These cases, as well as United States v. Chinook Investment Co., 136 F. 2d 984, held that the taxpayer in question was a dealer in securities. But since they resolved merely a question of fact, and contained significant evidence that is not present in the instant case, they do not support the conclusion respondent seeks here. On brief the petitioners argued that no income was realized either by Lilley & Co. or the individual partners upon the disposition of securities to the partners in the years 1942 and 1943. The partnership disposed of these securities pro rata to the partners at market price. This issue was not raised by the pleadings, nor suggested by anything contained therein or in the opening statement of counsel. Under these circumstances, the issue is not before us and may not be considered. Jamieson Associates, Inc., 37 B. T. A. 92. In the partnership income tax return for 1944, Lilley & Co. erroneously included the long term capital gain of $2,585.39 on the sale of 470%0<)ths voting trust certificates of Crestshire Corporation as a short term capital gain. The parties may make proper adjustment of this error in the computation under Rule 50. Decisions will be entered under Rule 50.