ARNOLD J. KOZIKOWSKI AND SHARON L. KOZIKOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kozikowski v. Commissioner
Docket No. 7666-83.
United States Tax Court
T.C. Memo 1986-364; 1986 Tax Ct. Memo LEXIS 237; 52 T.C.M. (CCH) 148; T.C.M. (RIA) 86364; August 11, 1986. Arnold J. Kozikowski, pro se. Oksana O. Xenos, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1979 in the amount of $8,441 and an addition to tax under section 6653(a)[1] in the amount of $422. After concessions, the issues are: (1) whether a loss realized by petitioners' wholly owned partnership from the sale of commodity futures is ordinary or capital; (2) whether petitioners have satisfied the requirements for a deduction for a charitable contribution; *238 and (3) whether petitioners are liable for the negligence addition under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Arnold J. Kozikowski and Sharon L. Kozikowski are husband and wife. At the time the petition was filed, petitioners resided in Fraser, Michigan. Petitioners' 1979 Federal income tax return was timely filed with the Internal Revenue Service Center at Cincinnati, Ohio. During 1979, Mr. Kozikowski was employed full-time as an automotive designer for the Chrysler Corporation. During 1979, both petitioners were partners in Catalyst's Associated Partnership, and each petitioner held a 50 percent interest in the partnership. Carl Russo, a certified public accountant and a neighbor of the Kozikowskis, prepared the partnership's tax returns. Mr. Russo thought the partnership *239 was originally formed for the purpose of investing in securities and commodity futures and advising people about these activities. While another couple was involved in the partnership in some capacity at an earlier time, in 1979 petitioners owned 100 percent of the partnership. Other than vague suggestions that Mr. Kozikowski may have "counseled" some people with respect to their positions in the securities markets, may have sold a piano, and may have resold some model car kits he purchased at K-Mart, there is no evidence as to the nature of the business of the partnership. There is no evidence that Mr. Kozikowski or the partnership was ever paid for these "counseling" services or ever received any income from sales of any personal property items. The partnership information return (Form 1065) filed by Catalyst's Associated listed its principal business as investments and listed its principal product or service as stocks and bonds. Catalyst's Associated was simply a vehicle for petitioners' personal investments. During 1979, Catalyst's Associated had gains and losses from silver futures transactions resulting in a net loss of $83,671 as follows: Date
Date Sold [2]
Acquired
Gain (Loss)
01-03-79
01-09-79
$ 539.00 01-11-79
01-16-79
2,314.00 10-19-78
01-18-79
(4,067.00)
04-17-78
01-18-79
12,224.00 02-13-79
10-19-78
(5,731.00)
02-13-79
03-22-79
2,270.00 03-08-79
04-18-79
1,345.00 03-30-79
09-06-79
19,375.00 04-03-79
09-06-79
19,350.00 04-16-79
09-06-79
20,175.00 04-19-79
09-06-79
19,428.00 02-27-79
09-06-79
(18,765.00)
03-16-79
09-06-79
(19,265.00)
04-09-79
09-06-79
(18,890.00)
04-26-79
09-06-79
(18,862.00)
10-12-79
05-15-79
(95,111.00)
Net Loss
($83,671.00)
*240 During 1979, Catalyst's Associated also had gains and losses from the sales of capital stock resulting in a net gain of $8,283 as follows: Date
Date
Gain
Capital Stock
Acquired
Sold
(Loss)
Northgate Exploration
10-11-77
04-02-79
$1,856.00 Dynalectron
01-10-79
04-06-79
475.00 Harmony Gold Mine
07-07-76
06-07-79
2,393.00 Kinross Mines
07-09-76
06-28-79
3,047.00 Wlkm Gold Mine
04-19-79
07-12-79
835.00 Telex
06-25-79
09-05-79
(225.00)
Chrysler
09-19-79
10-10-79
(98.00)
Net Gain
$8,283.00 Catalyst's Associated traded on the organized commodity and stock exchanges through the brokerage firm of Merrill, Lynch, Pierce, Fenner & Smith. All of the above-listed transactions, both stock and silver futures, were executed by Merrill, Lynch, Pierce, Fenner & Smith. Mr. Kozikowski was not licensed as a security dealer by the State of Michigan or the Securities *241 and Exchange Commission, nor was he a member of any stock exchange at any time pertinent to this case. Catalyst's Associated bought and sold all of its stocks and silver futures in its own name through the account with Merrill, Lynch, Pierce, Fenner & Smith. Catalyst's Associated did not buy or sell stocks or silver futures for or to any customers; it did not have any customers. Catalyst's Associated did not use silver (the metal) in any manufacturing activity and did not use silver in any business either as a raw material or as an inventory item. While Mr. Kozikowski may have had some silver bars that he held hoping to benefit from price fluctuations, if so, he held the silver as a personal investment and it was not used in any business in which either he or his partnership was engaged. The record does not establish that Midwest Decoy Association was an organization qualified to receive tax deductible contributions. [3]
*242 On its 1979 partnership return, Catalyst's Associated treated all the gains and losses from the stock and silver futures transactions as ordinary gains or losses. Catalyst's Associated also deducted $465 as a charitable contribution to the Midwest Decoy Association. The partnership reported a total loss of $75,152 which flowed through to petitioners as the sole partners. Petitioners' tax returns for the years 1974, 1976, and 1978 had been audited, with no change letters issued for the years 1974 and 1976 and with minor adjustments agreed to for the year 1978. Catalyst's Associated had been in existence since 1976. While the record does not show whether any partnership items were considered or adjusted in these audits, a capital gains issue may have been involved in the audit of the 1978 individual return. Because the partnership return had been prepared by a CPA and because of the prior audits, Mr. Kozikowski believed that respondent had accepted his treatment of both gains and losses from the sale of stock and commodity futures as ordinary income or loss in earlier years. The record does not establish that there had been any prior audit of the partnership returns before *243 the year 1979. OPINION The first issue is the proper classification of the net loss on silver futures as ordinary or capital. This depends on whether the silver futures were "capital assets" within the meaning of section 1221. The term "capital asset" is defined therein as "property held by the taxpayer (whether or not connected with his trade or business)," with certain specific exceptions. Petitioners rely on the exception in section 1221(1) that excludes from the term "capital asset" stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Mr. Kozikowski contends he was a dealer in the trade or business of buying and selling securities. Respondent contends he was a trader or investor who held the silver futures and stock as capital assets. [4] We agree with respondent. *244 Whether a particular taxpayer is a dealer or a trader is a question of fact. Kemon v. Commissioner,16 T.C. 1026 (1951). In Kemon,16 T.C. at 1032-1033, we explained the distinction between a dealer and a trader as follows: In determining whether a seller of securities sells to "customers," the merchant analogy has been employed. * * * Those who sell "to customers" are comparable to a merchant in that they purchase their stock in trade, in this case securities, with the expectation of reselling at a profit, not because of a rise in value during the interval of time between purchase and resale, but merely because they have or hope to find a market of buyers who will purchase from them at a price in excess of their cost. * * * Such sellers are known as "dealers." Contrasted to "dealers" are those sellers of securities who perform no such merchandising functions and whose status as to the source of supply is not significantly different from that of those to whom they sell. That is, the securities are as easily accessible to one as the other and the *245 seller performs no services that need be compensated for by a mark-up of the price of the securities he sells. The sellers depend upon such circumstances as a rise in value or an advantageous purchase to enable them to sell at a price in excess of cost. Such sellers are known as "traders." [Citations omitted.] See also Adnee v. Commissioner,41 T.C. 40 (1963). [5] As the facts of this case clearly demonstrate, Mr. Kozikowski (or his partnership) was a trader, not a dealer.He had no customers who regularly purchased commodity futures or stock in the ordinary course of business. All of the transactions were handled through Merrill, Lynch, Pierce, Fenner & Smith. He was not licensed to sell securities nor was he a member of any stock exchange. See Mirro-Dynamics Corp. v. United States,374 F.2d 14 (9th Cir. 1967), cert. denied 389 U.S. 896 (1967). Nor was Mr. Kozikowski (or his partnership) engaged in any business which utilized silver.Thus, the silver futures transactions were neither a hedge against raw materials used in a business nor purchases to insure a steady supply of a raw material. Corn Products Refining Co. v. Commissioner,350 U.S. 46 (1955); *246 Sicanoff Vegetable Oil Corp. v. Commissioner,27 T.C. 1056 (1957), revd. on other grounds 251 F.2d 764 (7th Cir. 1958). Catalyst's Associated deducted $465 under section 170(a) as a charitable contribution to the Midwest Decoy Association. Petitioners have the burden of proving entitlement to the deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Midwest Decoy Association, the recipient of the contribution, is not listed in I.R.S. Publication No. 78 [6] and petitioners have failed to establish that it is an organization qualified to receive tax deductibe charitable contributions. See n.3, supra.
Respondent also determined that petitioners *247 are liable for the section 6653(a) addition to tax for negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rosano v. Commissioner,46 T.C. 681, 688 (1966). Here petitioners relied on their accountant, who prepared the partnership returns. Because of the accountant's advice and because of the prior audits of their personal returns, petitioners believed that they could report their silver futures losses as ordinary losses. The accountant's advice was erroneous (see n.4, supra), but the Court is satisfied that petitioners relied upon that advice and acted in good faith. While the issue is close, we cannot conclude that petitioners were negligent or intentionally disregarded rules or regulations. To reflect the concessions and the above holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. We have listed this tabulated material exactly as it appears in the parties' stipulation, but it would appear that at the very least the headings have been reversed since in most instances this shows the futures being sold before they have been acquired.↩
3. At the conclusion of the trial the Court held the record open for 60 days to give petitioners an opportunity to furnish documentation to show that Midwest Decoy Association was a qualified organization. No further documentation or additional stipulation was forthcoming.↩
4. At trial while petitioners' CPA resisted Mr. Kozikowski's efforts to try to get him to say he (Mr. Kozikowski) was a dealer, the CPA seemed to draw a distinction between a trader or investor. The CPA tried to label Mr. Kozikowski as a trader, saying he was in business as an investor, in the business of buying and selling securities as an investment. In different contexts where the tax issue turns on whether the person is engaged in a trade or business, a distinction is sometimes drawn between a trader who is considered to be in a trade or business and an investor who is not. See Moller v. United States,721 F.2d 810 (Fed. Cir. 1983); Groetzinger v. Commissioner,82 T.C. 793, 800-801 (1984), affd. 771 F.2d 269 (7th Cir. 1985), cert. granted    U.S.    (March 24, 1986); Asch v. Commissioner,T.C. Memo. 1986-238; Zambakian v. Commissioner,T.C. Memo. 1986-219. However, that distinction has no bearing on the determination in the context of the present case of whether stocks, bonds, or other securities are capital assets in the hands of the particular taxpayer, such securities being capital assets in the hands of either a trader or an investor. As to the gains on the stock sales that petitioners reported as ordinary income, respondent, consistent with his position, determined in the statutory notice that they constitute capital gains.↩
5. See also Huebschman v. Commissioner,T.C. Memo. 1980-537; Ferguson v. Commissioner,T.C. Memo. 1974-244↩.
6. I.R.S. Publication No. 78 is a cumulative list of all organizations entitled to tax deductible contributions under section 170. It is updated quarterly for additions and monthly in the Internal Revenue Bulletin for deletions.↩