MICHEL R. AND GUNILLA M. HAMAOUI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamaoui v. Commissioner
Docket No. 37709-87
United States Tax Court
T.C. Memo 1991-411; 1991 Tax Ct. Memo LEXIS 432; 62 T.C.M. (CCH) 569; T.C.M. (RIA) 91411; August 21, 1991, Filed *432 Decision will be entered under Rule 155. Michel R. Hamaoui, pro se. Michael Fernandez-Melone, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice of deficiency dated August 31, 1987, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax [1]
Year
Deficiency
Sec. 6653(b)/(b)(1) [2]
Sec. 6653(b)(2)
1979
$ 838,249
$ 419,124
--
1980
107,123
53,562
--
1981
1,231
616
--
1982
5,582
2,791
*
1983
3,512
1,756
*
*433 Respondent also determined additions to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a) for 1979 and 1980, and section 6653(a)(1) and (2) for 1981, 1982, and 1983, as alternatives to his determinations of fraud. Following concessions by both parties, [3] the issues that we must decide are: (1) Whether deemed admissions modified by stipulations of fact are binding on the parties; (2) whether petitioners' 1979 and 1980 Schedule C losses were capital losses arising from petitioner Michel R. Hamaoui's status as a trader or investor in commodity futures contracts; (3) whether petitioners' underpayments for each of the years at issue were due to civil tax fraud; and (4) whether, in the alternative to the addition to tax for fraud, petitioners' underpayments were due to negligence or intentional disregard of rules or regulations. *434 FINDINGS OF FACT Petitioners Michel R. and Gunilla M. Hamaoui, husband and wife, were residents of Woodland Hills, California, at the time they filed their petition herein. They filed joint Federal income tax returns for each of the years at issue. References to petitioner in the singular are to Michel R. Hamaoui. Procedural Background
On March 23, 1989, respondent served on petitioners a request for admissions pursuant to Rule 90. Petitioners failed to make a written response to that request as required by Rule 90(c). As a result, the matters in the request for admissions were automatically deemed admitted on April 24, 1989. [4] On October 23, 1990, the day prior to the trial of this case, petitioners moved for withdrawal or modification of the deemed admissions. At the beginning of trial, this Court denied petitioners' motion and informed the parties that the deemed admissions would stand unless modified by stipulation. [5] Respondent then moved for partial summary judgment based on the deemed admissions as modified by the stipulations of fact, which we also denied. Respondent then rested his case, while petitioners presented evidence, including evidence relating to *435 the issue of fraud. Factual Background
Some of the facts have been stipulated and are so found. Other facts were deemed admitted pursuant to Rule 90(c). The deemed admissions as modified by the stipulations of fact, and the stipulations *436 of fact with attached exhibits are incorporated herein by this reference. During 1979 and the beginning of 1980, petitioner was employed as a stockbroker in the Beverly Hills, California, office of E. F. Hutton & Company, Inc. (E. F. Hutton). E. F. Hutton was a securities and commodities brokerage firm engaged in buying and selling securities and commodities on behalf of its clients. Petitioner's responsibilities included placing and carrying out orders for the purchase and sale of securities, as well as executing other transactions on behalf of E. F. Hutton's clients. During 1979 and 1980, in addition to his work on behalf of E. F. Hutton clients, petitioner entered into gold commodities futures contracts on his individual account at E. F. Hutton. [6] With respect to his individual account, petitioner was a seller of gold futures contracts and held a short position. Petitioner had outstanding approximately 30 gold commodities futures contracts sold short during the period. *437 During 1979 and 1980, the price of gold increased dramatically. On or about October 3, 1979, when asked by a representative of E. F. Hutton for evidence that he had the financial resources to support the continuous losses occurring in his account, petitioner provided a falsified personal financial statement which exaggerated petitioners' net worth. In actuality, petitioner was meeting his margin calls with embezzled funds. While employed by E. F. Hutton in 1979 and 1980, petitioner obtained 18 E. F. Hutton checks made payable to E. F. Hutton clients and deposited those checks, bearing forged endorsements of the payees, into his personal checking account without the payees' knowledge or consent. [7] Petitioners used these deposited amounts as their own personal funds. Sometime in January 1980, petitioner confessed this embezzlement to representatives of E. F. Hutton. On February 19, 1981, he was convicted by a jury of 17 counts of fraud by wire, and causing an act to be done, both Federal offenses. United States v. Hamaoui, CR 80-1071-R (C.D. Cal. 1981). Petitioner was sentenced on March 30, 1981. On March 29, 1982, following an unsuccessful appeal, petitioner commenced *438 his incarceration at Terminal Island, California. Petitioners filed their 1979 and 1980 Federal income tax returns with the Los Angeles District Director on February 24, 1982. The returns were received by the Fresno Service Center on March 11, 1982. Petitioners' 1979 and 1980 returns were prepared by Mr. Steven Isaacs, CPA, of the then public accounting firm of Oppenheim, Appel, Dixon & Co. (Oppenheim). Petitioners' 1979 and 1980 returns did not report as income any of the amounts that petitioner had embezzled and deposited in petitioners' checking account. Petitioners also claimed 1979 and 1980 Schedule C ordinary losses of $ 457,957, and $ 392,972, respectively, with regard to petitioners' trading in the gold commodity futures contracts. Petitioners' 1981, 1982, and 1983 tax returns *439 were also prepared by the Oppenheim accounting firm. Petitioners claimed net operating loss carryforwards, arising from their 1979 and 1980 losses from trading in commodity futures contracts, on their 1981, 1982, and 1983 returns. Petitioner was not a member of any commodity exchange or of any commodity trading clearinghouse during the years at issue. He acted solely by virtue of E. F. Hutton's membership in those exchanges. Petitioner was never present on the floor of any commodity exchange for any of the transactions in which he entered. He did not buy or sell commodity futures as hedges. Petitioner did not hold commodity futures contracts as stock in trade to be sold at a markup to customers. Petitioner never took delivery of any actual commodities. He did not hold commodity futures contracts as inventory items. In his notice of deficiency, respondent determined that petitioners' 1979 and 1980 returns failed to include as income $ 1,163,315 and $ 203,243, respectively. Respondent also determined that petitioner' losses from trading in the commodity futures were capital rather than ordinary losses, and, as such, were subject to the limitations of section 1211(b). Finally, *440 respondent determined that petitioners' tax underpayment for each of the years at issue was due to fraud. The parties now stipulate that: Petitioners fraudulently and with intent to evade tax omitted from their federal income tax returns for the taxable years 1979 and 1980 income in the amounts of $ 411,889.00 and $ 138,000.00, respectively. Petitioners' failure to report income on their 1979 and 1980 returns generated the net operating losses which petitioners carried forward to their 1981, 1982, and 1983 returns. Petitioners fraudulently and with intent to evade tax understated their income tax liabilities for their 1979, 1980, 1981, 1982 and 1983 taxable years as follows:
1979
$ 304,809.00
1980
$  64,117.00
1981
$   1,231.00
1982
$   5,582.00
1983
[8] $   3,512.00
*441 OPINION 1. Effect of Admissions and Stipulations
The first issue that we must decide is whether the deemed admissions as modified by the stipulations of fact are binding on the parties. Admitted matters are conclusively established. Rule 90(f). Likewise, a stipulation is treated as a conclusive admission. Rule 91(e).
Petitioners claim that they should not be bound by the deemed admissions as modified by stipulations of fact because they presented contrary evidence at trial. [9] At trial, a party can present evidence to place admitted facts in a different light, but he cannot impeach the facts already admitted. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). Accordingly, we hold that the deemed admissions modified by the stipulations of fact are binding on petitioners.
2. Character of the Losses
*442 The second issue that we must decide is whether the losses that petitioners suffered from trading the gold commodity futures contracts were ordinary losses as alleged by petitioners or capital losses as determined by respondent. A loss is characterized as a capital loss when two elements are present: (1) A sale or exchange of (2) a capital asset. Sec. 1222. Since petitioners have not contested respondent's determination that there was a "sale or exchange" of the gold commodities futures contracts, we hold that this element was present in the instant matter. Cf. Vickers v. Commissioner, 80 T.C. 394 (1983). Thus, we focus on whether or not the commodity futures contracts were capital assets within the meaning of section 1221. Petitioners bear the burden of proof on this issue. Rule 142(a). Subject to certain enumerated exceptions, section 1221 defines a capital asset as "property held by the taxpayer (whether or not connected with his trade or business)." Several decisions have held that commodity futures contracts fall within the definition of a capital asset. See, e.g., United States v. Rogers, 286 F.2d 277 (6th Cir. 1961); Faroll v. Jarecki, 231 F.2d 281 (7th Cir. 1956); *443 Vickers v. Commissioner, supra; Muldrow v. Commissioner, 38 T.C. 907 (1962). Although their contentions are far from clear, it appears that petitioners attempt to avoid capital asset characterization by relying on section 1221(1). [10] Section 1221(a) provides, inter alia, that the term capital asset does not include: property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.
Petitioners have failed to persuade us under any theory that their commodity *444 contracts were not capital assets. Section 1221(1) requires a taxpayer to hold his property primarily for sale "to customers" in order to prevent a speculator trading on his own account from claiming ordinary loss treatment. Kemon v. Commissioner, 16 T.C. 1026, 1032 (1951). In determining whether a taxpayer sells "to customers," a merchant analogy is used where the taxpayer expects to profit from the mark-up on his property rather than from an appreciation in its value. Schafer v. Helvering, 299 U.S. 171, 81 L. Ed. 101, 57 S. Ct. 148 (1936); Kemon v. Commissioner, supra at 1032-1033. Petitioner did not have any customers for gold contracts within the meaning of section 1221. See Faroll v. Jarecki, supra; Buehler v. Commissioner, T.C. Memo 1987-416. Additionally, since petitioner did not hold the property as inventory or as a hedge related to any inventory, any theory based on Arkansas Best Corp. v. Commissioner, 485 U.S. 212, 99 L. Ed. 2d 183, 108 S. Ct. 971 (1988), would not apply. See Arkansas Best Corp. v. Commissioner, supra at 222. We therefore hold for respondent on this issue. *445 3. Additions to Tax
The third issue for decision is whether petitioners' underpayment of tax for each of the years at issue was due to civil tax fraud. Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To meet his burden, respondent must establish: (1) An underpayment of tax; and (2) that some part of the underpayment was due to "an 'intentional wrongdoing * * *motivated by an intent to evade a tax known or believed to be owing.'" Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a factual question that must be resolved by consideration of the entire record. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Petitioners first argue that since this Court denied respondent's motion for partial summary judgment and respondent presented no further evidence, respondent fails to carry his burden of proving fraud. Petitioners imply that because we denied respondent's motion for partial summary judgment we also determined that the admissions and stipulations did not contain *446 the facts necessary to carry respondent's burden. We disagree. This Court denied respondent's motion on the ground that it was made at a time when trial would be delayed and was therefore not timely. See Rule 121(a). Such denial was in no way a conclusory determination on this issue. We have held that respondent may rely entirely upon deemed admissions with conclusory language to satisfy his burden of proof when the undenied conclusory allegations of fraud are preceded and supported by undenied allegations of specific facts consistent with the conclusory allegations. Dahlstrom v. Commissioner, supra; Doncaster v. Commissioner, 77 T.C. 334 (1981). The parties stipulated that: Petitioners fraudulently and with intent to evade tax omitted from their federal income tax returns for the taxable years 1979 and 1980 income in the amounts of $ 411,889.00 and $ 138,000.00, respectively. * * * Petitioners fraudulently and with intent to evade tax understated their income tax liabilities for their 1979, 1980, 1981, 1982 and 1983 taxable years as follows:
1979
$ 304,809.00
1980
$  64,117.00
1981
$   1,231.00
1982
$   5,582.00
1983
[11] $   3,512.00
*447 These stipulations, other than the dollar amounts for 1979 and 1980, are essentially the same as respondent's request for admissions which were deemed admitted under Rule 90(c). Petitioners do not contest the determination that they had unreported income, nor do they contend that they did not know that the amounts petitioner misappropriated were income. Rather, petitioners cite Davis v. Commissioner, 184 F.2d 86, 87-88 (10th Cir. 1950), remanding a Memorandum Opinion of this Court, and argue *448 that they were not fraudulent in failing to report the embezzled funds because they relied on the advice of a tax return preparer. Petitioner testified that the Oppenheim accounting firm advised him to not report the embezzled funds on his 1979 and 1980 returns, but instead to file amended returns once his criminal appeal was decided. We are not bound to accept a taxpayer's self-serving, uncorroborated testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. T.C. Memo 1769-159, cert. denied 404 U.S. 851, 30 L. Ed. 2d 90, 92 S. Ct. 88 (1971). In this case, petitioners had three members of the Oppenheim accounting firm testify on this matter. Two members were not familiar with petitioners' returns, but the other member, Mr. Steven Isaacs, denied having knowledge of the embezzled funds and denied advising petitioner not to report them. We are convinced that the Oppenheim accounting firm was unaware that petitioner embezzled these funds at the time petitioners' 1979 and 1980 returns were filed. As a result, we reject petitioners' argument based on Davis v. Commissioner, supra.
We hold that respondent has met his burden *449 of proving that petitioners' underpayment of tax for each of the years at issue was due to fraud within the meaning of section 6653(b). Based on this determination, we need not address respondent's alternative argument that petitioners' underpayments were due to negligence. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted. ↩
2. Sec. 6653(b) was amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 325(a), 96 Stat. 324, 616. Sec. 6653(b)(1) and (2) applies with respect to taxes the last day prescribed by law for payment of which is after September 3,1982. ↩
*. 50 percent of the interest due on the deficiency.↩
3. The parties stipulated that petitioners' 1979 and 1980 tax returns failed to include as income $ 411,889 and $ 138,000, respectively. Further concessions by the parties are set out in our Findings of Fact, infra↩.
4. See Morrison v. Commissioner, 81 T.C. 644, 647↩ (1983). 5. At that time, the parties had not agreed to a stipulation of facts as required by this Court's Rules and Standing Pretrial Order. The Court then granted the parties a 30-minute recess to complete their stipulation. When the Court reconvened the parties had two unexecuted stipulations of fact which the Court asked the parties' counsel to execute. Petitioners' counsel stated that he could not execute one of the stipulations because he did not have his clients' consent. When questioned, petitioner told his counsel, "I want you to sign them." Following a noon recess, petitioners' counsel withdrew his representation of petitioners when this Court refused petitioners' request to withdraw the stipulation.↩
6. A commodities futures contract is an executory contract obligating a seller to deliver and a buyer to receive a specified commodity at a specified time and for a predetermined price in the future. The seller is said to have a "short position" in the futures market when he does not own the commodity he has contracted to deliver. A seller holding a short position may satisfy his obligation to deliver under the contract by acquiring an equal and opposite futures position, called an offset, or he can make actual delivery of the physical commodity. A short seller profits on the transaction if the price of the commodity falls before the delivery date. Conversely, if the price of the commodity rises before the delivery date, the short seller will sustain a loss.↩
7. When petitioner's clients asked him about notices they had received from E. F. Hutton stating that funds had been withdrawn from their accounts, petitioner told his clients that the notices were generated by "computer error."↩
8. As noted above, the parties agreed to the stipulations of fact just prior to the beginning of trial. At that time, petitioners conceded the unreported amounts for 1979 and 1980, but had "not had any opportunity to calculate whether the concession on income properly translates into the concession on taxes due and owing." We advised petitioners that they could dispute the amount owing in a Rule 155 computation.↩
9. Petitioners also claim that the stipulations are not binding on the parties because the two stipulations do not comport with each other. We disagree; the stipulations do not conflict.↩
10. On brief, petitioners merely state that Oppenheim determined petitioner was a broker/dealer, and they would not second guess its determination. However, at trial petitioners apparently attempted to articulate an argument based on the Supreme Court's opinion in Arkansas Best Corp. v. Commissioner, 485 U.S. 212, 99 L. Ed. 2d 183, 108 S. Ct. 971↩ (1988).
11. In his motion for partial summary judgment and on brief, respondent alleged that petitioners also received taxable dividend income of $ 605 in 1980. This income was not part of the notice of deficiency, and, as a result, respondent had the burden of proof on this item. Rule 142(a). Respondent did not present any evidence to support this allegation. As a result, we hold that respondent has failed to carry his burden of proving petitioner received income in 1980 in excess of the amount stipulated.↩